UNITED STATES, Appellee

v.

Daniel A. ZARBATANY Jr., Airman First Class
U.S. Air Force, Appellant

No. 11-0165

Crim. App. No. 37448

United States Court of Appeals for the Armed Forces

Argued April 21, 2011

Decided July 6, 2011

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined. STUCKY, J., filed a separate dissenting opinion, in which RYAN, J., joined.


Counsel

For Appellant: Major Reggie D. Yager (argued); Lieutenant Colonel Gail E. Crawford (on brief).

For Appellee: Captain Scott C. Jansen (argued); Captain Michael T. Rakowski and Gerald R. Bruce, Esq. (on brief); Major Charles G. Warren.

Military Judge: Don M. Christensen


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Zarbatany, No. 11-0165/AF

Judge BAKER delivered the opinion of the Court.

Appellant entered mixed pleas at a general court-martial with members convened at Elmendorf Air Force Base, Alaska. He was convicted pursuant to his pleas of two specifications of unauthorized absence, two specifications of wrongful use of cocaine, and two specifications of wrongful use of marijuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a (2006).[1] The adjudged sentence consisted of a bad-conduct discharge, six months of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority disapproved the forfeitures and approved the remaining sentence.

On review, the United States Air Force Court of Criminal Appeals affirmed the findings and sentence as approved. United States v. Zarbatany, No. ACM 37448, 2010 CCA LEXIS 354, at *6, 2010 WL 3981672, at *3 (A.F. Ct. Crim. App. Oct. 4, 2010) (per curiam).

We granted review of the following assigned issues:

WHETHER THE AFCCA ERRED IN FINDING THAT ILLEGAL CONFINEMENT CREDIT, AWARDED PURSUANT TO ARTICLE 13, UCMJ, CANNOT BE APPLIED TOWARDS A PUNITIVE DISCHARGE.

WHETHER THE AFCCA ERRED BY FAILING TO GIVE MEANINGFUL RELIEF WHERE APPELLANT HAD 445 DAYS OF ILLEGAL PRETRIAL CONFINEMENT CREDIT IN EXCESS OF HIS APPROVED SENTENCE TO CONFINEMENT.

---

[1] The members returned a finding of not guilty to a distribution offense charged under Article 112a, UCMJ.

2

For the reasons set forth below, we conclude that to the extent its opinion is read to restrict the application of credit for illegal pretrial confinement to the forms of punishment listed in Rule for Courts-Martial (R.C.M.) 305(k), the Court of Criminal Appeals erred.  Conversion of confinement credit to forms of punishment other than those found in R.C.M. 305(k) is generally inapt.  This is especially true in the case of punitive discharges, where the qualitative differences between punitive discharges and confinement are pronounced.  However, Article 13, UCMJ, 10 U.S.C. § 813 (2006), does not preclude forms of relief other than confinement credit.  Nor has this Court's case law interpreted R.C.M. 305(k) as exclusively delimiting the form of relief lawfully available for violations of Article 13, UCMJ.

To reiterate prior case law interpreting the Constitution, the UCMJ, and the R.C.M.:  Article 13, UCMJ, relief can range from dismissal of the charges, to confinement credit or to the setting aside of a punitive discharge.  Where relief is available, meaningful relief must be given for violations of Article 13, UCMJ.  However, relief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense.

In this case, the Court of Criminal Appeals applied an erroneous view of the law in concluding that the only remedy

available to address the Article 13, UCMJ, violations in Appellant's case was to apply Appellant's Article 13, UCMJ, confinement credit against the forms of punishment listed in R.C.M. 305(k). At the same time, the lower court used its sentence appropriateness power to expressly determine that in light of the record as a whole, including Appellant's pretrial confinement, Appellant's sentence was not inappropriately severe. A judgment regarding sentence appropriateness should necessarily encompass a judgment that any additional Article 13, UCMJ, relief would be disproportionate in the context presented. However, because the Court of Criminal Appeals did not appear to determine whether such relief was disproportionate, we remand this case for a new Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006), review.

## I. BACKGROUND

On August 8, 2008, while stationed at Elmendorf, Air Force Base (Elmendorf), Appellant was ordered into pretrial confinement by the commander of the 3rd Civil Engineer Squadron. Because Elmendorf does not have its own pretrial confinement facility, the 3rd Wing, pursuant to Dep't of the Air Force, Instr. 31-205, The Air Force Corrections System para. 1.2.2.2. (Apr. 7, 2004) [hereinafter AFI 31-205], entered into an agreement with the Anchorage Correction Complex (ACC), a civilian confinement facility, to house both pretrial and post-

trial confinees from Elmendorf.  The Memorandum of Agreement (MOA) between ACC and Elmendorf outlined the responsibilities of both parties.  Specifically, Elmendorf would bear the cost of treatment at ACC, ensure monthly visits from the accused's unit commander or designated representative, help arrange visits from the accused's family, and monitor the accused's health, morale, and welfare through visits by a military confinement officer. The ACC would provide the means for Air Force inmates to comply with dress and appearance standards.

By the terms of the agreement, both parties were also required to comply with the Department of Defense (DOD) confinement standards set forth in AFI 31-205.  See AFI 31-205, para. 1.2.2.  These standards include housing pretrial inmates in separate cells or sleeping areas from post-trial inmates, though they may share common areas, id. at para. 5.8.1.2; prohibiting demeaning, degrading, or humiliating treatment, as well as hazing and "laying hands upon inmates" except for the minimum use of force necessary for the protection of persons or property, id. at para. 1.3.13.4; providing physical contact visits in the absence of substantiated risk, id. at para. 6.4.4; providing the same medical and dental care as active duty persons, id. at para. 6.5.2; and providing barber and beautician services, id. at para. 6.5.7.

The military judge found, and both parties agree, that Appellant's pretrial confinement conditions did not comply with the MOA or AFI 31-205.  The military judge's undisputed findings of fact are as follows:

- Appellant was in pretrial confinement at ACC for 119 days in "virtual lockdown status."

- He was confined to his cell "for an average of 23 hours a day except when he was brought on the base."

- He was only allowed out of his cell "to take a shower, . . . [to] visit[] with his wife by television," or for recreation.

- Any recreation Appellant was granted consisted of walking around an empty outdoor courtyard "not much bigger than [his] cell."

- With few exceptions, he was not allowed to converse with other inmates.

- He twice shared his cell with civilian post-trial inmates for a total of six days, one of whom was a convicted sex offender.

- In most instances, he was shackled or handcuffed when taken from his cell or receiving visits from his wife, attorney, or a member of his unit.  None of the visits with his wife were contact visits, even though other

convicted inmates were allowed contact visits with their families.

- For no apparent reason, he was locked in the shower between four and eight times, each time for thirty minutes to an hour. On one such occasion, this was brought to the attention of Correction Officer (CO) Zimmerman, who responded, "Airman Zarbatany can wait, or he can piss in the shower."

- On one occasion he was inadvertently hit with pepper spray directed at another inmate, and he did not receive the medical attention required within twenty-four hours of a chemical spray.

- He was improperly grabbed by a corrections officer and taken to be weighed after his complaints about his conditions were shown to members of ACC.

- He was denied appropriate hygienic services, including hair cuts and clean underwear, and required to wear an "insufficient" shoe for two weeks.

- Neither the commander nor a designee visited Appellant or his wife during the 119-day pretrial confinement. When the commander was present at ACC and invited to speak to Appellant, he declined because he "had nothing to say to him productively." When discussing

> Appellant's twenty-three-hour daily confinement, the commander responded, "It is appropriate because of what he has done."

- He was not given access to a common area.

- He was denied mental health counseling despite repeated requests to his commander and officials at both Elmendorf and ACC, notifying them not only of his confinement conditions but also of his ongoing relationship with a mental health care provider prior to his confinement. The military judge found this "particularly shocking" in light of the suicide of the 3rd Wing commander in July 2008.

- Appellant had access to other medical care, but he was required to bear the cost.

- Appellant was a "model prisoner with no disciplinary infractions" who presented no security risks.

Despite these deficiencies, the military judge found that neither the commander nor confinement officials at either Elmendorf or ACC intended to punish Appellant. However, the military judge found that "when given specific complaints that should have put the commander on notice that Airman Zarbatany was being illegally punished, he didn't care because he thought the punishment was appropriate for the crimes he had done -- overcoming Airman Zarbatany's presumption of innocence."

The military judge concluded his findings of fact by stating:

> [T]he court is specifically ordering four-for-one credit for the entire time [Appellant] has been in confinement. This is due to the continuing nature of the issues at ACC, including housing post-trial and serious offenders of a civilian nature with the accused and, very importantly, ignoring his claims and his requests for mental health care.
>
> The court specifically finds the conduct of his unit appalling, that his commander has abdicated his role as a commander in ensuring his troop is taken care of and that troop's family is taken care of.
>
> The court is very tempted to provide ten-for-one credit solely on the mental health issue considering this installation's notice of the seriousness of mental health issues.

The military judge then clarified that the four-for-one credit was in addition to one-for-one credit for the pretrial confinement. Thus, the military judge awarded Appellant 119 days credit for pretrial confinement plus an additional 476 days of credit (4 x 119) for the violation of Article 13, UCMJ, totaling 595 days of confinement credit.

The military judge later noted two prior cases involving illegal pretrial confinement conditions at ACC, and stated:

> [T]his installation [Elmendorf] has been aware of the deficiencies of using local confinement since at least 8 December 2005, at the time Airman Junior was court-martialed. Three years.
>
> So my guidance to this installation, the NAF, and MAJCOM is that they fix this.

At the conclusion of trial, the military judge made a clemency recommendation to the convening authority on the record that he disapprove the forfeitures, stating:

> I'll make a clemency [recommendation] that the forfeitures not be adjudged in this case. That would punish no one except Mrs. Zarbatany, who has done nothing wrong. In fact, unlike many cases that this court has dealt with where a spouse is sometimes complicit or hostile to the government, . . . Mrs. Zarbatany is the exact opposite of that and should not suffer as a result of this.

Trial counsel concurred with the military judge's assessment of Mrs. Zarbatany.

The confinement credits were applied against the adjudged confinement of six months (180 days), and Appellant was released from confinement at the conclusion of trial with 415 days of excess confinement credit.[2]

Following trial, the defense counsel requested that the convening authority defer the forfeitures of all pay and allowances and reduction portions of the sentence until the

---

[2] Appellant argues that his excess confinement credits totaled 445 days based on the assumption that thirty days good conduct time would also have applied. We decline to apply this assumption here, as Appellant did not serve his adjudged sentence, making good conduct time mere speculation. Nor would the difference affect our analysis. The excess credit is calculated as follows:

```
      119 days credit for pretrial confinement
+     476 days credit for violations of Article 13, UCMJ
      595 days credit total
-     180 days adjudged confinement
      415 days excess confinement credit
```

convening authority's action in order to allow Appellant to
continue to provide for his wife, who according to the written
request:

> initially contacted [Appellant]'s chain of command
> [sic] to notify them that her husband had a drug
> problem. . . . gave AFOSI [Air Force Office of Special
> Investigations] the evidence that was later used to
> convict her husband at trial. . . . consented to a
> search of their home in order to aid the investigation
> against her husband. . . . [and] contacted AFOSI a
> second time to again report that her husband was
> engaged in possible drug use.

The convening authority denied the request regarding reduction
in grade, but granted the request regarding forfeitures.  In his
later clemency petition, Appellant also requested disapproval of
his bad-conduct discharge in light of the actions taken by
Appellant's wife, the "onerous" nature of his pretrial
confinement, and the military judge's recommendation to
disapprove forfeitures.  The staff judge advocate recommended
disapproval of forfeiture of all pay and allowances and approval
of the bad-conduct discharge.  The convening authority approved
this recommendation in his action.  Although the clemency
petition mentioned Appellant's pretrial confinement conditions
and that the members were not made aware of such conditions in
sentencing, neither the staff judge advocate's recommendation
nor the convening authority's action reference them.

On appeal to the court below, Appellant "assert[ed] . . .
that his sentence [was] inappropriately severe, particularly

11

arguing that the punitive discharge should be disapproved to provide meaningful relief because the pretrial confinement credit exceeded the adjudged confinement to which the credit applied." Zarbatany, 2010 CCA LEXIS 354, at *2, 2010 WL 3981672, at *1. In a per curiam decision, the lower court, relying on R.C.M. 305(k), held that "the convening authority credited the appellant with the days awarded by the military judge and disapproved the adjudged forfeitures, leaving no other form of punishment to which the credit could properly apply," and that "the military judge properly awarded additional administrative credit for unduly harsh conditions of pretrial confinement and the convening authority properly applied the credit to the adjudged sentence." Id. at *2-*4, 2010 WL 3981672, at *1-*2. "Turning to the appellant's more general argument concerning sentence appropriateness," the Court of Criminal Appeals concluded that "Having given individualized consideration to this particular appellant, the nature of the offenses, and all other matters in the record of trial to include the appellant's pretrial confinement, we hold that the approved sentence is not inappropriately severe." Id. at *6, 2010 WL 3981672, at *2.

## II.  DISCUSSION

"The proper application[] of credit for illegal pretrial punishment . . . [is a] question[] of law, reviewed de novo." United States v. Spaustat, 57 M.J. 256, 260 (C.A.A.F. 2002).

Appellant argues that the court below erred in holding that R.C.M. 305(k) precludes the application of excess confinement credit against a punitive discharge in the context of an Article 13, UCMJ, violation and that its holding deprived Appellant of meaningful relief.  The Government responds that the lower court properly followed the plain language of R.C.M. 305(k), which expressly limits the application of confinement credits to punishments enumerated in that subsection.  Thus, the parties, like the court below, frame this case as a credit-conversion issue under R.C.M. 305(k).  However, we believe the parties and the lower court too narrowly defined the questions presented by Appellant's case.  There are at least two threshold questions before one gets to the application of R.C.M. 305(k):  (1) What relief is available as a matter of law for violations of Article 13, UCMJ, as occurred here; and (2) is meaningful relief legally required to be awarded, and if so, in what circumstances?

A.  Relief Under Article 13, UCMJ

Article 13, UCMJ, provides:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or

confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

In United States v. King, we addressed the contours of Article 13, UCMJ, stating:

Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial. The first prohibition of Article 13 involves a purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective." Bell [v. Wolfish], 441 U.S. [520,] 539 [(1979)]; [United States v.] McCarthy, 47 M.J. [162,] 165, 167 [(C.A.A.F. 1997)].

The second prohibition of Article 13 prevents imposing unduly rigorous circumstances during pretrial detention. Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the conditions may be so excessive as to constitute punishment. McCarthy, 47 M.J. at 165; United States v. James, 28 M.J. 214, 216 (C.M.A. 1989) (conditions that are "arbitrary or purposeless" can be considered to raise an inference of punishment).

61 M.J. 225, 227 (C.A.A.F. 2005); see also United States v. Harris, 66 M.J. 166, 167-68 (C.A.A.F. 2008). In King, we held that although merely classifying a pretrial inmate as "maximum" custody or comingling an inmate with post-trial inmates are not per se violations of Article 13, UCMJ, arbitrarily segregating a pretrial inmate for two weeks in a "six-by-six, windowless cell" did violate Article 13, UCMJ, and merited relief in the form of confinement credit under R.C.M. 305(k). 61 M.J. at 228-29.

United States v. Zarbatany, No. 11-0165/AF

As in King, the primary mechanism for addressing violations of Article 13, UCMJ, has been confinement credit. This Court initially awarded such credit in United States v. Larner, 1 M.J. 371 (C.M.A. 1976), and United States v. Suzuki, 14 M.J. 491, 493 (C.M.A. 1983), to provide an effective remedy for illegal pretrial confinement. The drafters of the R.C.M. subsequently "explicitly recognized" this practice with the adoption of R.C.M. 305(k) in the 1984 Manual for Courts-Martial, United States (MCM). See MCM, Analysis of the Rules for Courts-Martial app. 21 at A21-20 (2008 ed.) [hereinafter Drafters' Analysis]; Spaustat, 57 M.J. at 261.

R.C.M. 305(k) provides in relevant part:

> The military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances. This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served. This credit shall be applied first against any confinement adjudged. If no confinement is adjudged, or if the confinement adjudged is insufficient to offset all the credit to which the accused is entitled, the credit shall be applied against hard labor without confinement, restriction, fine, and forfeiture of pay, in that order . . . . The credit shall not be applied against any other form of punishment.

As discussed by the court below, the plain language of R.C.M. 305(k) requires that after the convening authority has applied confinement credit to the adjudged confinement, the convening authority may then apply any excess confinement credit

15

against (1) hard labor without confinement, (2) restriction, (3) fine, and (4) forfeiture, in that order, and credit "shall not be applied against any other form of punishment." Therefore, the lower court was correct in stating that R.C.M. 305(k)'s plain language excludes a punitive discharge from permissible applications of illegal confinement credit under the rule. See also United States v. Josey, 58 M.J. 105, 108 (C.A.A.F. 2003); United States v. Rosendahl, 53 M.J. 344, 347 (C.A.A.F. 2000).

As noted by the Court of Criminal Appeals, the Drafters' Analysis, and this Court's prior decisions, the reason for excluding a punitive discharge from the application of confinement credit is that a punitive discharge is "so qualitatively different" from the other punishments to which R.C.M. 305(k) credit can apply "that the fact that an accused has served confinement which was technically illegal should not automatically affect" a punitive discharge. Drafters' Analysis app. 21 at A21-21; Josey, 58 M.J. at 108 ("Although a punitive separation potentially involves monetary consequences, particularly with respect to veterans' benefits, the primary impact involves severance of military status"); Rosendahl, 53 M.J. at 348 (describing punitive discharges as "personnel-related punishments").

Our inquiry does not end there, however. As previously noted, R.C.M. 305(k) does not limit the availability of other

16

remedies under Article 13, UCMJ.  It is axiomatic, for example, that a court with appropriate jurisdiction may remedy an ongoing Article 13, UCMJ, violation through the writ of habeas corpus. No doubt, additional credit under R.C.M. 305(k) is a remedy for violations of Article 13, UCMJ.  See, e.g., Harris, 66 M.J. at 167; United States v. Adcock, 65 M.J. 18, 21 (C.A.A.F. 2007); United States v. Crawford, 62 M.J. 411, 414 (C.A.A.F. 2006); King, 61 M.J. at 227.  Indeed, it is a normative remedy and one that has been expressly endorsed in the rules.  But this Court has never held that R.C.M. 305(k) is the exclusive remedy for Article 13, UCMJ, violations.  To the contrary, our case law explicitly recognizes that certain circumstances may warrant other relief.  In Crawford, for example, we said that "[w]here we find that maximum custody was arbitrary and unnecessary to ensure an accused's presence for trial, or unrelated to the security needs of the institution, we will consider appropriate credit or other relief to remedy this type of violation of Article 13, UCMJ."  62 M.J. at 416 (emphasis added).  Prior case law has recognized that "other relief" for Article 13, UCMJ, violations may range from disapproval of a bad-conduct discharge, see United States v. Nelson, 18 C.M.A. 177, 181, 39 C.M.R. 177, 181 (1969), to complete dismissal of the charges, depending on the circumstances.  See United States v. Fulton, 55 M.J. 88, 89 (C.A.A.F. 2001).  It follows that if a court can

dismiss a charge in response to violations of Article 13, UCMJ, as in Nelson, a court can do something less by setting aside a discharge.

Therefore, we reiterate this Court's prior holdings, that although R.C.M. 305(k) is the principal remedy for Article 13, UCMJ, violations, courts must consider other relief for violations of Article 13, UCMJ, where the context warrants.

B.  Meaningful Relief As A Legal Requirement

Having determined that R.C.M. 305(k) is not the sole remedy for Article 13, UCMJ, violations, we now consider the second threshold question presented:  Is meaningful relief required in response to every Article 13, UCMJ, violation?  In specific terms, if Appellant's Article 13, UCMJ, violations warranted 595 days of relief, and he only received 180 days of actual relief, was there an additional form of relief available to make him whole?  Thus, the immediate question is not whether the court below erred in not applying excess confinement credit to a punitive discharge, but rather whether it erred by excluding the possibility that additional forms of relief might be available in response to Appellant's Article 13, UCMJ, violations and whether such relief was required in this context?

Appellant argues that meaningful relief is required in response to a violation of Article 13, UCMJ, and since he did not receive the full benefit of the military judge's confinement

18

credit, the law requires additional relief addressed to alternative portions of the sentence. The Government essentially argues that the issue of meaningful relief is subsumed within the lower court's exercise of its appropriateness power. The court below having determined that Appellant's sentence is appropriate in light of the confinement he received, it follows that Appellant has received all the credit that is appropriate under the circumstances for the violations of Article 13, UCMJ, that occurred.

This Court first addressed the question of whether meaningful relief is required for violations of Article 13, UCMJ, in Nelson, 18 C.M.A. at 181, 39 C.M.R. at 181. In Nelson, the appellant pled guilty to various violations of the UCMJ, including unauthorized absence, violating a lawful general order, possession of marijuana, and breach of restriction, and was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for six months, and reduction to E-1. Id. at 178, 39 C.M.R. at 178. The appellant was placed in pretrial confinement under circumstances indistinguishable from those of adjudged and sentenced inmates including identical indoctrination, dress, living, eating, and labor requirements. Id. at 178-79, 39 C.M.R. at 178-79. This Court reversed the board of review, holding that the appellant's pretrial confinement conditions constituted pretrial punishment

in violation of Article 13, UCMJ, and due process.  Id. at 181,
39 C.M.R. at 181 ("'Congress has decreed that, until convicted,
one charged with a crime shall not be subjected to punishment,
and we must enforce that edict.'" (quoting United States v.
Bayhand, 6 C.M.A. 762, 773, 21 C.M.R. 84, 95 (1956))).  The
appellant having already served his sentence, the only
unexecuted portion of the sentence was the punitive discharge.
Id.  The appellant requested relief in the form of dismissal of
the charges and specifications.  Id.  Although the court
recognized that the board of review was the proper authority for
reassessing the appropriateness of the sentence, the Court
nonetheless concluded that "modification of the sentence is in
order."  Id.  Specifically, the Court held:

> Under these circumstances, were we simply to return
> the case to the board of review for reassessment of
> the sentence, we would thereby imply that the bad-
> conduct discharge may be affirmed.  Such a course
> would deprive the accused of all meaningful relief,
> and would rightly suggest that this Court is prepared
> to wink at such grossly illegal treatment of men in
> pretrial confinement.  The disastrous effects of such
> a situation upon the system of military justice itself
> are so manifest as to require us to eliminate that
> possibility.

Id. at 181-82, 39 C.M.R. at 181-82.

Since Nelson, this Court has sought to "ensure meaningful
relief in all future cases" involving violations of Article 13,
UCMJ.  See Spaustat, 57 M.J. at 263-64; Suzuki, 14 M.J. at 493.
However, as in the context of appellate due process delay, the

20

question of what relief is due to remedy a violation, if any, requires a contextual judgment, rather than the pro forma application of formulaic rules. Whether meaningful relief has been granted and should be granted will depend on factors such as the nature of the Article 13, UCMJ, violations, the harm suffered by the appellant, and whether the relief sought is disproportionate to the harm suffered or in light of the offenses for which the appellant was convicted. See Harris, 66 M.J. at 169 (declining to set aside the punitive discharge "[i]n light of the offenses of which Appellant was convicted," because "such relief would be disproportionate to any harm he may have suffered").

In light of these cases, we conclude that meaningful relief for violations of Article 13, UCMJ, is required, provided such relief is not disproportionate in the context of the case, including the harm an appellant may have suffered and the seriousness of the offenses of which he was convicted. We further conclude that the issue of meaningful relief must be reviewed independent of the lower court's appropriateness review.

C. Meaningful Relief In This Case

Given this understanding of meaningful relief, we proceed to review whether the Court of Criminal Appeals denied Appellant meaningful relief in this case. "Whether the action taken by

the lower court provided meaningful relief is a question of law that we consider under a de novo standard of review." United States v. Pflueger, 65 M.J. 127, 128 (C.A.A.F. 2007).

In this case, Appellant was convicted of unauthorized absence, two specifications of wrongful use of cocaine, and two specifications of wrongful use of marijuana. Appellant's sentence included a bad-conduct discharge, six months of confinement, forfeiture of all pay and allowances, and reduction to E-1. As in Nelson, and unlike Harris, the pretrial confinement conditions in this case violated Article 13, UCMJ, and constituted pretrial punishment. We view the repeated denials of mental treatment by both Elmendorf and ACC as particularly egregious. In response, the military judge awarded four-to-one additional confinement credit. As noted above, this credit of 595 days more than satisfied the adjudged confinement of 180 days, leaving 415 days of excess confinement credit. The convening authority disapproved the forfeiture of all pay and allowances. As a result, only the bad-conduct discharge and the reduction to E-1 remained as sentencing elements against which meaningful relief might apply after the convening authority's action. At this point, the only meaningful relief that could be provided to Appellant would have to be addressed to his punitive discharge.

Appellant argues that this Court should follow Nelson and set aside his bad-conduct discharge. However, unlike Nelson, this case is complicated by the fact that it is not clear whether the lower court operated under a correct view of the law in reviewing Appellant's sentence and in exercising its appropriateness power. In particular, we do not know if the court below considered such relief unwarranted, unavailable, or available but disproportionate. Neither is it clear whether the court operated on the belief that meaningful relief was required where proportionate under the circumstances. Instead, the court appears to have subsumed the issue of meaningful relief into a question of credit conversion under R.C.M. 305(k) alone, and then as a question of sentence-appropriateness review under Article 66(c), UCMJ, where it operates at its broadest discretion. Therefore, we remand this case to the Court of Criminal Appeals for a new Article 66(c), UCMJ, review to determine whether the circumstances of Appellant's case warrant additional relief as a matter of law, or whether such relief would be disproportionate.

## III. CONCLUSION

For the foregoing reasons, the decision of the United States Air Force Court of Criminal Appeals is set aside, and the record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for a new Article 66(c),

23

UCMJ, 10 U.S.C. § 866(c) (2006), review consistent with this opinion.

STUCKY, Judge, with whom RYAN, Judge, joins (dissenting):

The majority remands this case to the United States Air Force Court of Criminal Appeals (CCA) to determine whether Appellant received meaningful relief for a violation of Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2006).  Whether Appellant has received meaningful relief is a question of law, which this Court is as well suited to decide as the CCA.  By simply addressing the crucial issue in this case of whether Appellant received meaningful relief, this Court need not reach other issues, namely, whether Rule for Courts-Martial (R.C.M.) 305(k) limits the remedies available for an Article 13 violation.  For these reasons, I respectfully dissent.

I.

An Article 13 violation does not directly impugn the results of a trial by court-martial, which is why the error has been traditionally cured by providing the accused with sentence relief.  See R.C.M. 305(k) (recognizing several sentence relief options as the remedies for a variety of errors that result in confinement credit).  For Article 13 violations, sentence relief is calculated in terms of confinement credit, which is then applied against an appellant's sentence.  See United States v. Rock, 52 M.J. 154, 156-57 (C.A.A.F. 1999).

Of course, every error does not demand the same degree of relief.  Rather, our precedents indicate that this Court

balances the error complained of, the harm suffered, and the surrounding circumstances to determine whether the accused received meaningful relief.  See United States v. Harris, 66 M.J. 166, 169 (C.A.A.F. 2008) (holding that "granting Appellant [the requested] relief would [have been] disproportionate to any harm he may have suffered").  The balancing of these factors is a question of law that we review de novo.  See United States v. Pflueger, 65 M.J. 127, 128 (C.A.A.F. 2007) ("Whether the action taken by the lower court provided meaningful relief is a question of law that we consider under a de novo standard of review.").

Review for meaningful relief may be contrasted with reviewing for sentence appropriateness.  The latter focuses on whether the sentence resulted in disparate treatment between individuals or was otherwise inappropriately severe under the facts of the case.  See United States v. Baier, 60 M.J. 382, 384-85 (C.A.A.F. 2005).  Although the review for meaningful relief and sentence appropriateness is not the same, substantial overlap exists between them.  A lower court, in reviewing the sentence for appropriateness, may resolve the issue of whether the accused received meaningful relief by taking into account errors that would require sentence relief.  See United States v. Suzuki, 20 M.J. 248, 249 (C.M.A. 1985) ("Indeed, had we believed that this credit already had been taken into account in the

2

reduction of sentence originally ordered by the Court of Military Review, there would have been no occasion for further action by that court.").

In this case, the CCA stated that, "[h]aving given individualized consideration to this particular appellant, the nature of the offenses, and all other matters in the record of trial to include the appellant's pretrial confinement, we hold that the approved sentence is not inappropriately severe." United States v. Zarbatany, No. 37448, 2010 CCA LEXIS 354, at *6, 2010 WL 3981672, at *2 (A.F. Ct. Crim. App. Oct. 4, 2010) (unpublished) (emphasis added). The CCA's discussion indicates that it determined the extent of sentence relief necessary in determining the appropriateness of the sentence. Under these circumstances, the CCA exercised its broad power over sentences, and its decision should be reviewed for an abuse of discretion or a miscarriage of justice. See United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F. 1999). The sentence the CCA affirmed clearly passes muster under this deferential standard of review.

But even if the majority is correct that the CCA did not properly understand the effect of R.C.M. 305(k), United States v. Zarbatany, __ M.J. __ (22-23) (C.A.A.F. 2011), we should not remand the case for further review, but conduct a de novo review of whether Appellant received meaningful relief.

United States v. Zarbatany, No. 11-0165/AF

II.

Both this Court and the Drafters' Analysis recognize that confinement credit and punitive discharges are qualitatively different. See United States v. Rosendahl, 53 M.J. 344, 348 (C.A.A.F. 2000); see also United States v. Spaustat, 57 M.J. 256, 263 (C.A.A.F. 2002). Under R.C.M. 305(k), confinement credit applies to more traditional punishments, such as hard labor without confinement, restriction, fine, and forfeiture of pay. United States v. Josey, 58 M.J. 105, 107-08 (C.A.A.F. 2003). Punitive discharges and reductions in rank, although punitive, are different in that they are decisions based on the perceived ability of a particular person to continue to function in the military at a particular position of respect and responsibility. Id. The extent of this Court's power to set aside a punitive discharge on the basis of unapplied confinement credit awarded for Article 13 violations has been a legitimate question since the promulgation of R.C.M. 305(k). The general policy against doing so, however, is a sound one, which is evidenced by the fact that cases like United States v. Nelson, 18 C.M.A. 177, 39 C.M.R. 177 (1969), a case in which this Court's predecessor set aside the punitive discharge, are exceedingly rare in our jurisprudence. Appellant argues that this case is like Nelson. The reliance of both the majority and Appellant on Nelson is undermined by the fact that the

4

decision in Nelson preceded the enactment of R.C.M. 305(k), which is contrary to the holding in Nelson.  Even aside from the timing issue, this case is not like Nelson.

In that case, we concluded that Nelson's treatment in pretrial confinement violated Article 13 because he had been treated as though he had already been convicted of a crime. Nelson, 18 C.M.A. at 178, 39 C.M.R. at 178.  Importantly, the Court of Military Appeals (CMA) concluded that the accused was subjected to punishment in violation of Article 13.  Id. at 181, 39 C.M.R. at 181.  Because the rest of Nelson's sentence had already been executed, the CMA determined that the punitive discharge had to be set aside to avoid the potentially serious effects of not taking action, even though Nelson only had forty-two days of unapplied pretrial confinement credit.  Id. at 181-82, 39 C.M.R. at 181-82.

By contrast, in this case, the military and prison officials violated a number of service regulations that, when aggregated, violated Article 13.  The military judge, however, found that the military and prison officials never intended to punish Appellant.  Moreover, Appellant's pretrial confinement credit was actually applied to reduce his sentence, such that he served no post-trial confinement.  In addition, the convening authority deferred forfeitures until action and, ultimately, did not approve any forfeitures.  For these reasons, the facts of

5

this case stand in stark contrast to those of Nelson, in which Nelson was actually punished and had no other potential remedies remaining except to set aside his punitive discharge. See id.

Under the circumstances of this case, Appellant received meaningful relief in that he served no post-trial confinement and his forfeitures were set aside. Setting aside the punitive discharge would be disproportionate to the harm Appellant suffered and inconsistent with the Court's treatments of such relief. Unlike the majority, I need not and would not decide whether R.C.M. 305(k) limits the remedies available to a court to cure a violation of Article 13, because I am able to determine that Appellant received meaningful relief without resolving that issue. Considering the majority's discussion of the issue, I would be remiss, however, if I said nothing about the current status of R.C.M. 305(k).

### III.

Before R.C.M. 305(k), this Court's predecessor recognized that it could adjust the entirety of the sentence, including punitive discharges, as necessary to provide meaningful relief for violations of Article 13. See Nelson, 18 C.M.A. at 181, 39 C.M.R. at 181; cf. United States v. Heard, 3 M.J. 14, 23 (C.M.A. 1977) (noting that it was inappropriate to modify other aspects of the sentence, including setting aside the punitive discharge, as requested by the appellant, given the circumstances of the

case).  R.C.M. 305(k) changed the legal landscape by stating

that pretrial confinement:

> shall be applied first against any confinement
> adjudged.  If no confinement is adjudged, or if the
> confinement adjudged is insufficient to offset all the
> credit to which the accused is entitled, the credit
> shall be applied against hard labor without
> confinement, restriction, fine, and forfeiture of pay,
> in that order . . . .

R.C.M. 305(k).  Significantly, the final sentence of R.C.M.

305(k) states that "[t]he credit shall not be applied against

any other form of punishment."  Id.

In enacting Article 13, Congress was entirely silent on

what remedies are available for violations of that article.  But

by promulgating R.C.M. 305(k), the President clearly attempted

to limit the remedies available for a violation of Article 13.

In particular, the President attempted to prohibit the

application of confinement credit to a punitive discharge.  This

Court has never determined whether the President has such power,

but our precedent has generally followed the guidance provided

by R.C.M. 305(k).  The majority fails to clearly explain why we

should or can avoid our precedent and the rule's plain

direction.

Indeed, we have used R.C.M. 305(k) and its underlying

reasoning, as reflected in the Drafters' Analysis, as a guide in

determining what constitutes meaningful relief.  See Rosendahl,

53 M.J. at 348 (accepting the Drafters' Analysis for why this

Court should not automatically apply confinement credit to a punitive discharge).  I see no reason to depart from that precedent in this case and decide an issue that is unnecessary to the outcome in this case.  Under our precedents, it is clear that Appellant received meaningful relief.  Disapproval of his punitive discharge would grant him a windfall.  Whether R.C.M. 305(k) controls sentence relief for violations of Article 13 is a question that can be left for another day.

### IV.

For the above reasons, I would affirm the judgment of the United States Air Force Court of Criminal Appeals.