Judge OHLSON,
with whom Chief Judge ERDMANN joins, concurring in part and dissenting in part.
OVERVIEW
In various eases during the past few decades, this Court has concluded that: (a) the effect of ordering a rehearing in á case is to place the accused in the same position he or she was in before the original trial began, United States v. Von Bergen, 67 M.J. 290, 294 (C.A.A.F.2009); (b) an accused’s pay status while awaiting rehearing should be the same as if the accused had never been tried in the first place, Keys v. Cole, 31 M.J. 228, 232 (C.M.A.1990); (c) in determining whether there was illegal pretrial punishment under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2012), we look not only at whether there was an “intent” to punish an accused, but also at whether there was a “punitive effect,” United States v. *395 Fischer, 61 M.J. 415, 421 (C.A.A.F.2005); and (d) the “primary mechanism” for addressing Article 13, UCMJ, violations is to award confinement credit. United States v. Zarbatany, 70 M.J. 169, 174 (C.A.A.F.2011).
In the instant case, Appellant’s[1] convictions and sentence were vacated by the United States Navy-Marine Corps Court of Criminal Appeals (CCA) and a rehearing was ordered. Pending this rehearing, Appellant’s E-6 rank was restored, he was placed in an E-6 billet, and he performed E-6 duties. And yet, Appellant was paid at the E-l pay grade—a fact that he repeatedly protested— and his loss of pay amounted to more than $20,000.
Based on these facts and the case law cited above, I conclude that the military judge did not err in finding that the circumstances in the instant case constituted illegal pretrial punishment, nor did he err in awarding confinement credit to Appellant based on this illegal pretrial punishment. Accordingly, to the extent that the majority opinion[2] holds otherwise, I respectfully dissent.
ANALYSIS
I concur with the majority’s decision on Certified Issues I, II, and III, but part ways as to Certified Issue IV. In my view and as explained in greater detail below, the military judge did not clearly and indisputably err in finding illegal pretrial punishment under Article 13, UCMJ, when the Government continued to enforce a set-aside punishment by paying Appellant at the E-l pay grade while assigning him duties commensurate with an E-6 pay grade.
Certified Issue IV asks whether the Government’s decision to pay Appellant at the E-l pay grade after his sentence was set aside constitutes illegal pretrial punishment under Article 13, UCMJ. In analyzing this issue, I initially observe that Appellant’s ease is before this Court because of the CCA’s decision to deny a writ sought by the Government to prohibit the military judge from awarding Article 13, UCMJ, confinement credit to Appellant. The case law pertaining to such writs is clear. “[T]he issuance of [an extraordinary] writ is a matter vested in the discretion of the court to which the petition is made.” Cheney v. United States Dist. Court for D.C., 542 U.S. 367, 391, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). A writ of prohibition will only issue if the Government establishes that: “(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances.” Hasan v. Gross, 71 M.J. 416, 418 (C.A.A.F.2012). Further, this type of writ is a drastic remedy that should only be invoked in extraordinary cases. See Cheney, 542 U.S. at 380, 124 S.Ct. 2576. When Appellant’s case is viewed within this legal framework, I conclude that the CCA appropriately denied the writ because the military judge did not clearly and indisputably err in finding illegal pretrial punishment under Article 13, UCMJ.
Turning to the primary issue, Article 13, UCMJ, prohibits, in relevant part, illegal pretrial punishment or penalty. See Fischer, 61 M.J. at 418. There is illegal pretrial punishment when the Government has “a purpose or intent to punish” as determined by examining either (1) “the intent of [the government] officials” or (2) “the purposes served by the restriction or condition, and whether such purposes are reasonably related to a legitimate governmental objective.” Zarbatany, 70 M.J. at 174 (internal quotation marks omitted) (quoting United States v. King, 61 M.J. 225, 227-28 (C.A.A.F.2005)). This Court therefore “look[s] to whether there was intent to punish or a punitive effect.” Fischer, 61 M.J. at 421 (emphasis added).
I agree with the majority that there is no evidence in the record that government officials at the command level had an intent to punish Appellant.[3] However, I disagree with the majority’s decision not to consider the punitive effects of government action to de *396 termine whether an Article IS, UCMJ, violation occurred here. As I read this Court’s case law, the punitive effect inquiry is nothing more than an examination of whether the purpose of a condition had a legitimate, non-punitive governmental objective.[4]1 find nothing of the sort in the instant case.
First, a reduction m pay is an authorized 'punishment for a court-martial conviction, See Rule for Courts-Martial 1003(b)(4); United States v. Simpson, 10 C.M.A. 229, 232, 27 C.M.R. 303, 306 (1959) (recognizing a reduction in pay grade as a “permissible punishment” at court-martial). At the time the Government paid Appellant at the E-l pay grade while he performed duties commensurate with an E-6 pay grade there was no court-martial conviction and therefore no valid punishment to impose because the CCA had set aside the findings and sentence. See Von Bergen, 67 M.J. at 294.
Second, the Government benefitted from Appellant’s continued reduction in rank because it obtained Appellant’s services at a reduced pay rate. The majority suggests that this windfall serves a legitimate governmental objective “to provide an accused pending rehearing with the proper pay entitlement as prescribed by Congress.” United States v. Howell, 75 M.J. 386, 394 (12) (C.A.A.F.2016). However, as even the majority concludes, Article 75(a), UCMJ, did not provide the Government with a statutory basis for denying Appellant pay at the E-6 pay grade while he awaited rehearing.[5] Without any valid basis to reduce Appellant’s pay grade, I conclude that the Government’s pay entitlement decision was not “proper,” and therefore the Government did not have a legitimate governmental basis to compensate Appellant at the E-l pay grade while it received services commensurate with the E-6 pay grade.
For these reasons, I conclude that the military judge did not clearly and indisputably err in finding that it was illegal pretrial punishment “to have the Accused on full duty, wearing the rank of Staff Sergeant and performing the duties of a Staff Sergeant but receiving pay as E-l.” Accordingly, I re *397 spectfully dissent from the majority’s holding that there was no Article 13, UCMJ, violation and would answer Certified Issue IV in the affirmative.
CONCLUSION
I concur with the majority’s resolution of Certified Issues I, II, and III, and I respectfully dissent from the majority’s decision with respect to Certified Issue IV. I therefore would' affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.

. The accused in this case stands before this Court as both an Appellant and as a Cross-Appellee. In the course of this dissent I refer to him simply as "Appellant."

. The term "majority opinion” refers to the opinion authored by Judge Sparks, which commands a majority of three or more judges of this Court on each of the four certified issues.

.I note that officers in Appellant's chain of command were not the only government officials *396 directly involved in this case. In a November 13, 2014, memorandum addressing the matter of pay in Appellant's case, the Office of the General Counsel for the Defense Finance and Accounting Service (DFAS) stated that there were two potential ways to comply with federal civilian court rulings on military pay. One was to pay Appellant at the E-l pay grade; the other was to pay Appellant at his preconviction rate, i.e„ at the E-6 pay grade. However, DFAS asserted that the latter course of action would “place [Appellant] in debt for the overpayment if the reduction is imposed at rehearing.” This assertion is at best questionable because any punishment awarded at a subsequent rehearing would only apply prospectively, see Article 57, UCMJ, 10 U.S.C. § 857 (2012), and only the portion of the first court-martial punishment that had already deprived Appellant of property would continue to be enforced if the same punishment was imposed on rehearing, Article 75(a), UCMJ, 10 U.S.C. § 875(a) (2012). And importantly, in its memorandum DFAS failed to account for this Court’s case law addressing an accused's status when awaiting a rehearing. Accordingly, by allowing military authorities to rely on a bureaucratic decision instead of this Court’s interpretation of military justice matters when deciding what constitutes Article 13, UCMJ, illegal pretrial punishment, the majority cedes far too much of our institutional authority in regard to determining what Articles 13 and 75 mean in any particular criminal case. See Garrett v. Lowe, 39 M.J. 293, 296 n.4 (C.M.A.1994) (noting this Court's special competence in interpreting the UCMJ).

. Compare Fischer, 61 M.J. at 418 ("examining the intent of [government] officials or ... the purposes served by the restriction or condition [to see if they are] reasonably related to a legitimate governmental objective" for an Article 13, UCMJ, violation (internal quotation marks omitted) (citation omitted)), with id. at 421 (examining punitive intent or punitive effect for an Article 13, UCMJ, violation),

. The statutory framework instead suggests that the Government should have paid Appellant at the E-6 pay grade. Congress has provided that an active duty servicemember is "entitled to the basic pay of the pay grade to which assigned.” 37 U.S.C. § 204(a) (2012). Appellant was assigned duties commensurate with the pay grade of E-6. Had the Government not erroneously interpreted Article 75(a), UCMJ, it would have assigned Appellant to the E-6 pay grade, and it would have paid him at this pay grade. See 37 U.S.C. § 204(a); cf. Bell v. United States, 366 U.S. 393, 401-02, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) ("[A] soldier who has not received such a punishment from a duly constituted court-martial is entitled to the statutory pay and allowances of his grade and status, however ignoble a soldier he may be.”).