# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39092**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jhoan M. CATANO**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 January 2018

————————————

*Military Judge:* Matthew P. Stoffel.

*Approved sentence:* Bad-conduct discharge, confinement for 239 days, reduction to E-1, forfeiture of all pay and allowances, and a reprimand. Sentence adjudged 11 February 2016 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major Annie W. Morgan, USAF; Captain Patricia Encarnción Miranda, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

In accordance with Appellant's pleas pursuant to a pretrial agreement, a military judge found Appellant guilty of one specification of absence without authority in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886; three specifications for the wrongful possession of a controlled substance (methamphetamine, oxycodone, and heroin) and two specifications for the wrongful use of a controlled substance (heroin and methamphetamine) in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; and one specification of aggravated assault with a dangerous weapon in violation of Article 128, UCMJ, 10 U.S.C. § 928. Officer members sentenced Appellant to a bad-conduct discharge, confinement for 239 days, reduction to E-1, forfeiture of all pay and allowances, and a reprimand. The convening authority approved the sentence as adjudged.

Officer members effectively sentenced Appellant to "time served" with regard to the confinement component of the sentence. Appellant spent 239 days in pretrial confinement prior to the announcement of sentence and those days were applied against the adjudged sentence to confinement. Appellant filed pretrial motions alleging two distinct violations of Article 13, UCMJ, 10 U.S.C. § 813. Appellant claimed: (1) the conditions of his pretrial confinement were unnecessarily severe, and (2) his pay was wrongfully terminated while he was in pretrial confinement. Concluding that Appellant was arbitrarily held in maximum custody and in unnecessary segregation during periods of his pretrial confinement, the military judge awarded Appellant with 277 days of illegal pretrial confinement credit. The military judge, however, denied Appellant's motion for additional relief based on termination of pay while Appellant was in pretrial confinement as illegal pretrial punishment. The military judge also denied Appellant's motion to apply the 277 days of illegal pretrial confinement credit, which as a result of the "time served" sentence became excess confinement credit, to the adjudged bad-conduct discharge.

Appellant now asserts the following issues on appeal: (1) whether Appellant was punished illegally in violation of Article 13, UCMJ, when his pay was terminated after being placed in pretrial confinement, and (2) whether 277 days of confinement credit awarded him by the military judge for illegal pretrial punishment in violation of Article 13 should have been applied toward the punitive discharge to ensure meaningful relief for the violations. Appellant requests this court provide relief for the Article 13 violations by setting aside the bad-conduct discharge. After weighing the impact of the violations on Appellant, we find that granting the requested relief would be disproportionate to the aggravated nature of the offenses of which he was convicted and deny Appellant's request.

## I. BACKGROUND

This was Appellant's second court-martial within a year. In his first court-martial, convened on 21 April 2015, Appellant faced a charge with three specifications alleging the wrongful use of marijuana, heroin, and lorazepam (a Schedule IV controlled substance) in violation of Article 112a, UCMJ. Concluding that Appellant was entitled to the limited protections of Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (8 Jul. 2014), for certain disclosures made by Airmen who self-identify drug abuse,[1] the military judge at the first court-martial suppressed multiple admissions made by Appellant and the results of a urinalysis obtained by search authorization that relied on those admissions for probable cause. The Government filed an interlocutory appeal challenging the military judge's ruling.[2]

While Appellant's first court-martial was stayed pending the Government's appeal, his chain of command decided, in the interests of mission accomplishment, unit morale and cohesion, and Appellant's welfare, to reassign Appellant from the plumbing section to the heavy equipment section of the civil engineer squadron and then to the base chapel. On 4 June 2015, a chaplain found a glass pipe in the restroom of the chapel. The chaplain did a quick internet search on drug paraphernalia and determined the pipe he discovered was consistent with one used for smoking methamphetamine. When confronted about the pipe, Appellant pleaded with the chaplains not to turn him in. Appellant then entered his vehicle and started to drive, even though he saw the wing chaplain on the hood of his vehicle attempting to keep Appellant from leaving. The chaplain was able to slide off the vehicle without injury as Appellant drove away and began a 13-day period of absence without leave (AWOL).

Upon learning that Appellant was AWOL, AH, the spouse of one of Appellant's deployed co-workers in the plumbing section and a friend of Appellant, became concerned for Appellant's welfare and safety. She communicated with Appellant through text messaging, offered him food, water, and money, and convinced Appellant to meet her in person on the condition that she would not turn him in to the authorities. Appellant told AH to meet him in the parking lot of a restaurant located a half-mile from one of the gates of Davis-Monthan Air Force Base. AH arrived at the designated location at approximately 2300 hours on 7 June 2015. Appellant climbed into AH's vehicle and removed a metal bar and a knife from his shorts so he could sit down. The metal bar was

---

[1] Appellant participated in the ADAPT program for his drug abuse.

[2] In a published opinion addressing the first court-martial, the court concluded the military judge did not abuse her discretion and denied the Government's appeal. *United States v. Catano*, 75 M.J. 513 (A.F. Ct. Crim. App. 2015).

about 12 inches long with a diameter approximately the size of a nickel. Appellant rested his right arm on the passenger side door and held the knife sideways in his right hand. He held the metal bar in his left hand and laid it across his lap. As AH drove, Appellant correctly deduced that AH was going to turn and drive on to the base. AH described Appellant's reaction as follows:

> [H]e got, you know, raised his voice and he took out a---like a bar---and a knife and just---a knife and he just kept saying and looked at me and "[AH], don't make me do this, don't make me hurt you. Please don't make me do this. We're not going to base, don't make me do this," just over-and-over again. So, I would---that was---that was enough; that scared me.

Fearing that Appellant might harm her with the metal bar and knife, AH complied with Appellant's command and drove away from the installation. She then bought Appellant food and cigarettes and dropped him off at an intersection. As a result of the incident, AH suffered significant emotional and mental distress. The distress was so great that she began locking herself in her bedroom; barricading the door to her bedroom with chairs and other furniture; and placing a loaded handgun on her nightstand. Eventually, AH left her off-base home to move on to base.

Two days after Appellant assaulted her with the knife and metal bar, AH searched her vehicle and found two cellular phones and a sunglasses case left by Appellant. The sunglasses case contained a needle, spoon, syringe, and some amount of what was later identified as methamphetamine, oxycodone, and heroin.

Appellant turned himself in on 17 June 2015. On that same day, Appellant was ordered into pretrial confinement by his commander. Although Appellant was initially held in medium custody, Appellant was placed in maximum custody on 15 September 2015 due to a change in Air Force policy requiring all pretrial confinees to be held in maximum custody regardless of their individual circumstances. On 4 November 2015, the Defense Finance and Accounting Service (DFAS), concluded that Appellant's term of enlistment had expired on 3 November 2015 and terminated Appellant's pay in accordance with the Department of Defense Financial Management Regulation (DoD FMR).

## II. DISCUSSION

### A. Termination of Pay as Illegal Pretrial Punishment

Appellant disputes the determination by DFAS that his enlistment expired on 3 November 2015 and the resultant termination of his pay and allowances while he was in pretrial confinement. Appellant asserts that DFAS committed

a violation of Article 13, UCMJ, in that they "arbitrarily chose to ignore Appellant's enlistment [extension] contract and thereby deprive[d] him of pay and allowances;" that their action "d[id] not serve a legitimate government objective;" and that their action "reflect[ed] an intent to punish [Appellant]." We disagree.

The question of whether Appellant is entitled to credit for an Article 13 violation is reviewed de novo. *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005) (citing *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002)). It is a mixed question of law and fact, and the military judge's findings of fact will not be overturned unless they are clearly erroneous. *Id.* Appellant bears the burden of proof to establish a violation of Article 13. *Id.*

The military judge concluded that Appellant did not meet his burden of proof. The military judge stated on the record that "the evidence before the court is that finance officials determined [Appellant]'s enlistment expired and in accordance with regulations, [Appellant]'s pay and allowances stopped on that date. Similarly to the situation in *U.S. v. Fischer*, there is a legitimate non-punitive reason to stop the [Appellant]'s pay and allowances which was not implicitly punitive or punitive in effect." We agree that Appellant has not met his burden of proof.

Article 13 provides, "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him." Article 13 prohibits two types of actions: (1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement. *See United States v. Inong*, 58 M.J. 460, 463 (C.A.A.F. 2003); *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997).

In *Fischer*, the United States Court of Appeals for the Armed Forces (CAAF) concluded that termination of pay for a servicemember in pretrial confinement at the expiration of an enlistment contract did not amount to illegal pretrial punishment under Article 13. *Fischer*, 61 M.J. at 420–21. CAAF specifically concluded that the policy to terminate pay was non-punitive in both its purpose and effect. "The fact that pay is terminated only when pretrial confinement is combined with a neutral criterion, the expiration of the term of service, underscores the non-punitive nature of the policy." *Id.* at 420. The "date is a rational, objective point for termination of pay, and it is reasonably related to the legitimate government objective of not paying people who are not performing duties." *Id.* Appellant attempts to distinguish his case from *Fischer* by focusing on a six-month extension to his enlistment that, if in effect, would have set his expiration of term of service (ETS) at 3 May 2016.

Appellant's six-year enlistment began on 4 November 2008 and was set to expire on 3 November 2014. Appellant requested two extensions of his enlistment. The first extension was for 12 months and covered the period from 4 November 2014 until 3 November 2015. Appellant's second extension was for six months and would have been for the period from 4 November 2015 until 3 May 2016. Appellant requested this extension on 17 October 2014 and his commander recommended approval on 20 October 2014. The request was approved on 3 November 2014. The second extension was memorialized on an Air Force Form 1411, *Extension or Cancellation of Extensions of Enlistments in the Regular Air Force.*

Three matters on the form merit particular attention for our review of whether the DFAS determination reflected punitive intent. First, there is a block labeled "reenlistment eligibility code." Second, there is a block related to the first and acknowledged by Appellant that states the following:

> I understand if the reason for this extension is cancelled because I am rendered ineligible to reenlist, the Air Force may cancel my extension. Cancelation may occur as long as I have not entered the extension.

Finally, there is a block where Appellant acknowledges his understanding that his ETS will not change until he enters the extension. Reviewing whether DFAS had punitive intent with regard to the termination of Appellant's pay while he was in confinement, we considered whether there was a good-faith basis for DFAS to conclude: (1) Appellant was ineligible to reenlist as of 4 November 2015; (2) the ineligibility voided the extension that Appellant had not yet entered; and (3) therefore, his ETS of 3 November 2015 never changed and termination of pay on that date was required under the DoD FMR.

The terms and provisions on the form are further illuminated by reference to the Air Force policy in effect at the time—AFI 36-2606, *Reenlistment in the United States Air Force* (9 May 2011). Reenlistment eligibility codes determine whether one may reenlist or enlist in a military service at a later time. These codes are also used to determine eligibility for extensions of an enlistment and cancellation of a previously approved extension. AFI 36-2606, Table 5.2., *Conditions Barring Immediate Reenlistment* (9 May 2011), contains a general prohibition listing circumstances under which an applicant is not authorized to extend an enlistment. Among these circumstances are:

1. "Participating in or failed the Alcohol and Drug Abuse Prevention and Treatment (ADAPT) program for drugs, or has failed to complete the ADAPT program. (This code remains valid until the Airman completes the program or the commander removes the ineligibility condition for an Airman in the aftercare program)";

2. "Absent without leave (AWOL)";

3. "Under investigation by military or civilian authority, the outcome of which may result in discharge or court-martial action"; and

4. "Civil court charges pending for an offense for which the MCM authorizes confinement for the same or most closely related offense, or court-martial charges have been preferred, or court-martial action is under appellate review."

There were four distinct bases to conclude that Appellant was ineligible to enter an extension of an enlistment as of 4 November 2015. Appellant complains that the "government effectively voided" his extension a year after its approval. We agree that Appellant's extension was voided but conclude that it was done consistent with conditions of ineligibility he had acknowledged on the form. Because those conditions existed in Appellant's case, DFAS could reasonably consider Appellant's enlistment extension void, determine that his ETS expired on 3 November 2015, and terminate his pay in accordance with the DoD FMR. These actions could all be done in good faith based on Appellant's plain and obvious ineligibility for reenlistment and extension. The record does not demonstrate precisely how the extension was cancelled or whether the cancellation complied with the relevant instruction. However, the absence of demonstrated compliance with the instruction does not establish the presence of punitive intent or effect. Appellant fails to meet his burden of proof for a violation of Article 13.[3]

## B. Meaningful Relief for Violation of Article 13

Near the conclusion of trial, the military judge discussed the impact of the pretrial agreement in light of the adjudged sentence and asked the parties whether there was any other matter to address before he adjourned the court-martial. Appellant's trial defense counsel requested the military judge apply the 277 days of illegal pretrial confinement credit, which as a result of the "time served" sentence became excess confinement credit, to the adjudged bad-conduct discharge. After weighing the nature of the Article 13 violation and the aggravated nature of Appellant's offenses, the military judge concluded that "under the facts and circumstances of this case, disapproval of the bad-conduct discharge is not warranted" and would be disproportionate in this case. We agree.

---

[3] "Under an Article 13 claim, we look to whether there was intent to punish or a punitive effect. If Appellant takes issue with the propriety of the underlying decisions as a matter of fiscal law, he must pursue that issue before the United States Court of Federal Claims." *Fischer,* 61 M.J. at 421.

"The proper application of credit for illegal pretrial punishment . . . [is a] question[ ] of law, reviewed de novo." *United States v. Spaustat,* 57 M.J. 256, 260 (C.A.A.F. 2002) (citations omitted). "Article 13 relief can range from dismissal of the charges, to confinement credit, to the setting aside of a punitive discharge." *United States v. Zarbatany*, 70 M.J. 169, 170 (C.A.A.F. 2011). "Where relief is available, meaningful relief must be given for violations of Article 13. However, relief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense." *Id.*

We have reviewed the military judge's finding of facts on the matter of excess confinement credit and adopt them as our own. We also agree with the judge's conclusions that, while the conditions of Appellant's pretrial confinement were unnecessarily severe, he was not subject to cruel and unusual punishment and there was not an intent to punish him. As we consider the adjudged sentence and, in particular, the bad-conduct discharge, we find it wholly appropriate for the offenses committed by Appellant. His multiple drug offenses and AWOL offense justify the sentence adjudged. The addition of the aggravated assault separates Appellant from a drug addict on a downward spiral. Appellant's purposeful and unlawful demonstration of violence toward AH, a friend seeking to help Appellant in his time of need, dwarfs any harm experienced by Appellant in maximum-custody pretrial confinement. While we do not condone the arbitrary imposition of a regulation dictating maximum custody for an Airman already being securely held in medium custody, relief in the form of setting aside the punitive discharge would be disproportionate to the harm suffered by Appellant and the nature of Appellant's offenses.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

8