UNITED STATES, Appellee

v.

Miguel E. INONG, Damage Controlman
First Class (E-6)
U.S. Navy, Appellant

No. 00-0327

Crim. App. No. 9801667

United States Court of Appeals for the Armed Forces

Argued April 9, 2003

Decided July 10, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, and ERDMANN, JJ., joined. BAKER, J., filed a separate opinion concurring in part and in the result.

Counsel

For Appellant: Major Anthony C. Williams, USMC (argued and on brief).

For Appellee: Lieutenant Lori McCurdy, JAGC, USNR (argued); Colonel Rose M. Favors, USMC (on brief).

Military Judge: G. N. Gonzalez

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, Appellant was convicted by a military judge sitting as a general court-martial of conspiracy to commit larceny, desertion, larceny, making and uttering bad checks, housebreaking, and carrying a concealed weapon, in violation of Articles 81, 85, 121, 123a, 130, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881, 885, 921, 923a, 930, and 934 (2000), respectively. He was sentenced to a dishonorable discharge, confinement for three years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence but suspended confinement in excess of 20 months in accordance with the terms of a pretrial agreement between Appellant and the convening authority.

The Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence in a short-form, unpublished opinion. United States v. Inong, NMCM No. 98-01667 (N-M. Ct. Crim. App. Sep. 29, 1999). Thereafter, Appellant petitioned this Court for review, and for the first time at either the trial or appellate level, he sought sentence relief for what he argued was illegal pretrial punishment. In response, this Court set aside the decision of the Court of Criminal Appeals and remanded the case to that court "to consider this question initially and to take

2

United States v. Inong, No. 00-0327/NA

remedial action if necessary." United States v. Inong, 54 M.J. 375 (C.A.A.F. 2000).

Prior to that remand, but after the lower court initially decided Appellant's case, this Court decided United States v. Southwick, 53 M.J. 412 (C.A.A.F. 2000), and United States v. Tanksley, 54 M.J. 169 (C.A.A.F. 2000). In Southwick and Tanksley, we held that when the record reflects a tactical decision to present the issue of illegal pretrial punishment to the court-martial panel with the goal of obtaining a lesser sentence, rather than presenting the issue to the military judge for the purpose of obtaining pretrial punishment credit, that tactical decision waives the issue of whether a specific credit for pretrial punishment is warranted.

Relying on these cases, the Court of Criminal Appeals again affirmed the findings and sentence in Appellant's case, concluding that Appellant made a tactical decision at trial to use the conditions of his pretrial confinement as a means of obtaining a lesser adjudged sentence, rather than seek credit against his adjudged sentence by arguing the issue of illegal pretrial punishment. United States v. Inong, 57 M.J. 501, 502-03 (N-M. Ct. Crim. App. 2002).

Thereafter, Appellant again petitioned this Court for review, and we granted the petition on the following issues:

3

I. WHETHER APPELLANT WAS SUBJECTED TO ILLEGAL PRETRIAL PUNISHMENT BY BEING CONFINED IN MAXIMUM CUSTODY FOR 37 DAYS IN VIOLATION OF ARTICLE 13, UCMJ, 10 U.S.C. § 813 (2000).

II. WHETHER THE LOWER COURT ERRED IN FINDING THAT APPELLANT AFFIRMATIVELY WAIVED THE ISSUE OF ILLEGAL PRETRIAL PUNISHMENT.

As to Issue II, we hold the Court of Criminal Appeals correctly applied Southwick and Tanksley to the facts of Appellant's case, and thereby correctly determined that Appellant is not entitled to any appellate relief stemming from the conditions of his pretrial confinement. We further hold that in the future, failure at trial to raise the issue of illegal pretrial punishment waives that issue for purposes of appellate review absent plain error. See United States v. King, 58 M.J. 110 (C.A.A.F. 2003)(holding the same as to restriction tantamount to confinement).

Given our resolution of Issue II, we need not address Issue I.

FACTUAL BACKGROUND

Between October 2, 1996, and January 9, 1997, Appellant conspired with two different servicemen on three separate occasions to steal government-owned computers worth in aggregate more than $8,700. In turn, each of these planned larcenies was completed, with Appellant and his co-conspirators breaking into several Navy office buildings in the middle of the night and

4

stealing the desired computers.  However, shortly thereafter, Appellant's co-conspirators were questioned by law enforcement agents, and they made statements incriminating both themselves and Appellant.  As a result, charges were preferred against Appellant for these offenses, and he soon faced court-martial.

But a court-martial was something Appellant was unwilling to face, so on July 19, 1997, he left the military in order to avoid prosecution, and remained absent until March 1, 1998, when his absence was terminated by apprehension.  Prior to his apprehension, Appellant continued his criminal conduct by knowingly writing ten bad checks while he had insufficient funds and no intent to pay.  Nine of the checks were for cash received totaling $2,700, and one was to "purchase" yet another computer valued in excess of $3,400.  All of the checks bounced.

Initially, Appellant was apprehended by civilian authorities.  At the time of his apprehension, Appellant was found illegally concealing a loaded .40 caliber handgun underneath the seat of a car.  Shortly thereafter, Appellant was transferred to military control and placed in "maximum custody" pretrial confinement.  In an affidavit filed with the Court of Criminal Appeals after our remand, Appellant described these conditions as follows:

> On March 10, 199[8] I was confined to the Camp
> Pendleton Base Brig.  Upon arrival at [4:00 a.m.] my

head was shaved bald and I was placed in [maximum] confinement.[*]  Two U.S. Marine guards escorted me in my bare feet, with leg irons and my hands handcuffed to my waist to a 5-foot by 8-foot metal cell.  The Ambient air temperature was right around 48 degrees Fahrenheit.  I was given three wool blankets and told to fill out a cell evaluation and then go to sleep. At [4:45 a.m.] I went to sleep and was told to rise at [5:00 a.m.] by guard for reveille.  I was feed [sic] my meal through a 12 inch by 5 inch opening in the metal door.  The same opening used to pass a toilet brush to clean my toilet.  When I showered I was handcuffed and any other time I left the special quarters area I was handcuffed to my waist and legs were shackled with leg irons.

On or about March 28, 199[8] my brig assigned counselor, SGT [M] informed me that if I signed a Pre-trial agreement he would get me out of [maximum] Confinement.  Later that week I spoke to my defense counsel, Lt. [N], and counsel informed me that he would be coming to the brig to discuss a Pre-trial agreement.

On or about April 4, 199[8] Lt. [N], Defense counsel, arrived at Camp Pendleton base brig.  He informed me of a pre-trial agreement the government had offered and that if I accepted the agreement He would get me out of [maximum] Confinement.  I signed the agreement.

On or about April 10, 199[8] I received a fax copy of my signed pre-trial agreement from my Convening Authority, naval Weapons Station: Seal Beach.  Upon receipt of that agreement I gave a copy to my Brig Counselor, SGT [M].  SGT [M] stated that he would be able to get me out of [maximum] Confinement soon.  On or about April 15, 199[8] I was released from [maximum] Confinement.

---

[*] In his affidavit, Appellant mistakenly referred to the year as "1997" and the confinement as "solitary."  United States v. Inong, 57 M.J. 501, 502 n.2 (N-M. Ct. Crim. App. 2002).

United States v. Inong, No. 00-0327/NA

Appellant argues the conditions of this maximum custody pretrial confinement amounted to illegal pretrial punishment entitling him to sentence credit. The Government has not contested Appellant's version of the conditions of his pretrial confinement, and we accept them as true for purposes of this appeal. See United States v. Steele, 53 M.J. 274, 275 (C.A.A.F. 2000)(uncontested facts in document offered by Appellant and admitted by this Court accepted as true for purposes of appeal). As for Appellant, he has never suggested that the relationship between entering into a pretrial agreement and being released from maximum custody affected the voluntariness of his pretrial agreement or the providence of his pleas, and no such issue is before us. See Inong, 57 M.J. at 503 n.5 ("[Appellant] stated, under oath, that no one had threatened or forced him to enter into the pretrial agreement, [and] that he entered into the agreement voluntarily").

### PROCEDURAL BACKGROUND

Neither Appellant nor his defense counsel filed any complaint or grievance prior to trial asserting that the conditions of Appellant's pretrial confinement rose to the level of illegal pretrial punishment. Moreover, at trial, before receiving Appellant's pleas, the military judge asked if the defense had any motions, and the defense had none. That is

7

significant, because if Appellant wanted sentence credit for what he believed was illegal pretrial punishment at the confinement facility, he could have asked for it, as he was not precluded from doing so by the terms of his pretrial agreement. See United States v. McFadyen, 51 M.J. 289 (C.A.A.F. 1999) (accused can waive right to seek relief for illegal pretrial punishment as part of pretrial agreement with convening authority).

Although at trial Appellant did not seek sentence credit for illegal pretrial punishment, he twice made reference to the conditions of his pretrial confinement when he gave an unsworn statement before being sentenced. At the beginning of his statement, he said: "While I was confined at Camp Pendleton base brig, the first weeks I spent I spent in solitary confinement. I sat in a six by nine cell, next to convicted murderers, rapists and drug dealers." At the end of his statement he also said: "During my six weeks of solitary confinement at Camp Pendleton base brig, I sunk to the lowest point in my Life . . . . In that six by nine cell . . . I realized I must accept responsibility for my actions."

Appellant's trial defense counsel also referenced the conditions of Appellant's pretrial confinement during counsel's sentencing argument. Counsel said:

> Earlier we mentioned that the maximum [confinement the accused faces] is 126 years. That's a long time, sir. What is the purpose of keeping him in there that long? The message we're sending out to the fleet is "hey, we're not going to tolerate this. And that's why if you get caught, we're going to send you to Camp Pendleton, spend six weeks in maximum and then whatever else time."

On appeal, Appellant asserts that during the period of his pretrial confinement, the brig had a policy of confining all pretrial detainees in maximum custody who could be sentenced to more than five years' confinement, and that the policy was applied arbitrarily to him.

## DISCUSSION

### 1. Appellant's Case

Article 13 provides:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence [at trial].

Thus, in United States v. Fricke, 53 M.J. 149 (C.A.A.F. 2000), this Court recognized that Article 13 prohibits two things: (1) the intentional imposition of punishment on an accused before his or her guilt is established at trial, i.e., illegal pretrial punishment, and (2) arrest or pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement. Id. at

9

United States v. Inong, No. 00-0327/NA

154 (citing United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F. 1997)).

If an accused, or appellant, can demonstrate that either existed, he or she is entitled to sentence relief. United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002)("burden is on appellant to establish . . . violation of Article 13"); Rule for Courts-Martial 305(k)[hereinafter R.C.M.]("additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances"); United States v. Suzuki, 14 M.J. 491 (C.M.A. 1983).

Nothwithstanding these rules, an appellant is not entitled to sentence credit on appeal for what is alleged to have been illegal pretrial punishment or confinement if such relief was not sought at trial, but instead, a tactical decision was made to use the complained of conditions as a means of obtaining a lesser adjudged sentence. Southwick, 53 M.J. at 416; Tanksley, 54 M.J. at 177. In Appellant's case, the Court of Criminal Appeals concluded that is exactly what happened. We agree with the court below. Appellant is now precluded under Southwick and Tanksley from arguing that the conditions of his pretrial confinement violated Article 13. He is therefore entitled to no sentence relief.

10

## 2. Future Cases

In United States v. Huffman, 40 M.J. 225, 227 (C.M.A. 1994), a majority of this Court held that "we will not invoke waiver [of alleged Article 13 violations] unless there is an affirmative, fully developed waiver on the record." Today, however, we conclude Huffman's affirmative waiver rule is unworkable. As a result, we now overrule Huffman and begin following the "raise or waive" rule required by the Manual for Courts-Martial, United States (2002 ed.)[hereinafter MCM], as relates to assertions of illegal pretrial confinement and punishment. See R.C.M.s 905(e), 906(b)(8); Huffman, 40 M.J. at 228-29 (Crawford, C.J., joined by Gierke, J., dissenting in part and concurring in the result). In so doing, we also overrule Southwick, 53 M.J. at 416, and Tanksley, 54 M.J. at 177-78, to the extent they establish a "tantamount to affirmative waiver" rule in the Article 13 arena.

This we do not do lightly, respectful as we are of the important doctrine of stare decisis. Thus, in United States v. Tualla, 52 M.J. 228 (C.A.A.F. 2000), we stated:

> Under this fundamental principle, adherence to precedent "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."

11

Id. at 231 (quoting Payne v. Tennessee, 501 U.S. 808, 827

(1991)).  However, we also recognized in Tualla that "[s]tare

decisis is a principle of decision making, not a rule, and need

not be applied when the precedent at issue is 'unworkable or

. . . badly reasoned.'"  Id.  Unfortunately, Huffman's

affirmative waiver rule has proven to be unworkable when one

considers the result it has generated in light of the strong

policy reasons behind the "raise or waive" rule.

The purpose of the MCM's "raise or waive" rule is "to

promote the efficiency of the entire justice system by requiring

the parties to advance their claims at trial, where the

underlying facts can best be determined."  King, 58 M.J. at 114.

This rule is especially important in the military justice system

"[b]ecause of the turnover of personnel and changing conditions

at [military] confinement facilities."  Huffman, 40 M.J. at 229

(Crawford, C.J., joined by Gierke, J., dissenting in part and

concurring in the result).  Once an Article 13 violation is

suspected, the parties "must determine who was responsible for

operating the facility, interview witnesses at the facility to

determine the nature of the confinement conditions, and

determine" whether there actually was illegal pretrial

punishment or confinement.  Id.  "Obviously, raising an

allegation such as [this] on appeal for the first time that

could have been raised as early as in the pretrial stage places an unnecessary burden on a worldwide justice system. That is precisely why there are Manual Rules invoking waiver." Id.

The rationale behind waiver is "to eliminate the expense to the parties and the public of rehearing an issue that could have been dealt with by a timely objection or motion at trial" by the one party best positioned to make that happen – the party in need of relief. Id. This principle is "essential" to the continued effectiveness of our heavily burdened trial and appellate judicial systems. Hormel v. Helvering, 312 U.S. 552, 556 (1941). At odds with this principle, however, is the result produced by the Huffman rule and exemplified by Appellant's case – "one more case demonstrating the wisdom of the waiver rule in R.C.M. 905(e)." Fricke, 53 M.J. at 156 (Gierke, J., concurring in part and dissenting in part).

Time and again since Huffman was decided, appellants have waited until the appellate stages of the court-martial process to advance claims of illegal pretrial confinement and punishment, and to seek sentence relief. See Tanksley, 54 M.J. at 169; United States v. Scalarone, 54 M.J. 114 (C.A.A.F. 2000); Southwick, 53 M.J. at 412; Fricke, 53 M.J. at 149; United States v. Yunk, 53 M.J. 145 (C.A.A.F. 2000); United States v. Avila, 53 M.J. 99 (C.A.A.F. 2000); see also King, 58 M.J. at 110 (same for

13

restriction tantamount to confinement).  At the same time, however, appellants frequently have placed before the trial level sentencing authority information and argument about those very same pretrial conditions, hoping it will result in a lenient sentence.  See Tanksley, 54 M.J. at 177; Southwick, 53 M.J. at 416; Inong, 57 M.J. at 502.

The end result of this practice is expensive, time-consuming appellate litigation characterized by undeveloped factual records (which could have been created at the trial level), the resulting need for remands and rehearings, and the difficulty in conducting those proceedings years later when confinement facilities, personnel, and programs have changed. We therefore conclude that Huffman is unworkable and must be overruled, along with the Southwick and Tanksley "tantamount to affirmative waiver" rule.  We therefore hold that once this opinion becomes final, failure at trial to seek sentence relief for violations of Article 13 waives that issue on appeal absent plain error.  See King, 58 M.J. at 114 (same for restriction tantamount to confinement).  Having said that, however, we urge all military judges to remember that nothing precludes them from inquiring sua sponte into whether Article 13 violations have occurred, and prudence may very well dictate that they should.

14

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

Judge BAKER (concurring in part and in the result):

I would decide this case on the ground that Appellant has not carried his burden of demonstrating a violation of Article 13, Uniform Code of Military Justice, 10 U.S.C. § 813 (2000). As this court has recognized on previous occasions, Appellant's failure to raise the matter at trial may be indicative of, but not dispositive as to, whether or not an individual was subject to pretrial punishment.

Although I agree with the majority and the lower court that United States v. Southwick, 53 M.J. 412 (C.A.A.F. 2000), and United States v. Tanksley, 54 M.J. 169 (C.A.A.F. 2000), were the law at the time, I am less confident than the majority that an appellate court can infer from Appellant's sentencing statement a tactical choice to abstain from seeking credit for alleged pre-trial punishment as a means of obtaining a lesser adjudged sentence. Certainly, I am not prepared to conclude that Appellant's words, or those of his counsel, amounted to an affirmative waiver on Article 13.

In my view, Tanksley and Southwick invite appellate courts to engage in appellate speculation regarding trial tactics that in context may be undue. This concern is readily avoided by the prospective rule adopted by the court today or by having military judges affirmatively inquire where the facts suggest the possibility of Article 13 credit. Where liberty interests

and unlawful government conduct converge in Article 13, legal policy should favor clear black-letter rules.  Therefore, I join that part of the lead opinion adopting a clear raise or waive rule linked as it is to this Court's admonishments that military judges should exercise their inherent and prudential authority to affirmatively inquire where the facts suggest that an Article 13 violation may have occurred.  See United States v. King, 58 M.J. 110, 115 (Baker, J., with whom Erdmann, J., joined concurring in result).