UNITED STATES, Appellee

v.

William J. KREUTZER Jr., Sergeant
U.S. Army, Appellant

No. 11-0231

Crim. App. No. 9601044

United States Court of Appeals for the Armed Forces

Argued October 24, 2011

Decided February 2, 2012

STUCKY, J., delivered the opinion of the Court, in which RYAN, J., and COX, S.J., joined.  ERDMANN, J., filed a dissenting opinion, in which BAKER, C.J., joined.


<u>Counsel</u>


For Appellant:  Captain <u>Barbara A. Snow-Martone</u> (argued); <u>Lieutenant Colonel Jonathan F. Potter</u> (on brief); <u>Colonel Mark Tellitocci</u>, <u>Lieutenant Colonel Peter Kageleiry</u>, <u>Major Laura R. Kesler</u>, and <u>Captain Jess B. Roberts</u>.

For Appellee:  Captain <u>Chad M. Fisher</u> (argued); <u>Colonel Michael E. Mulligan</u> (on brief); <u>Major Ellen Jennings</u> and <u>Major Adam S. Kazin</u>.

Military Judges:  P. E. Brownback III (trial) and Patrick J. Parrish (rehearing)


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether Appellant was entitled to additional confinement credit under Rule for Courts-Martial (R.C.M.) 305, or Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2006), after prison officials at the United States Disciplinary Barracks retained Appellant on death row despite the United States Army Court of Criminal Appeals (CCA) setting aside Appellant's death sentence. We hold that Appellant was not entitled to such credit because he was still subject to lawful confinement as a prisoner found guilty of a number of offenses. Therefore, Appellant's confinement was outside the scope of R.C.M. 305 and Article 13, which only apply to pretrial confinees.

I.

A.

We previously summarized the result of Appellant's initial trial:

> Sergeant (SGT) William J. Kreutzer Jr. opened fire with an automatic weapon on personnel in his brigade when they were in formation commencing a unit run. He was subsequently charged with one specification of premeditated murder, eighteen specifications of attempted premeditated murder, one specification of violation of a lawful general regulation, one specification of larceny of Government munitions, four specifications of maiming, and eighteen specifications of aggravated assault, in violation of Articles 118, 80, 92, 121, 124, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 918, 880, 892, 921, 924, 928 (2000), respectively.

2

> The charges were referred to a general court-martial
> with instructions that the case was "[t]o be tried as
> a capital case."
>
> Kreutzer pleaded guilty to one specification of
> murder while engaged in an act inherently dangerous to
> another (as a lesser included offense of premeditated
> murder), eighteen specifications of assault with a
> loaded firearm (as a lesser included offense of
> attempted premeditated murder), one specification of
> violating a lawful general regulation, and one
> specification of larceny of Government munitions.  He
> was convicted of one specification of premeditated
> murder, eighteen specifications of attempted
> premeditated murder, one specification of violating a
> lawful general regulation, and one specification of
> larceny of Government munitions.  A unanimous twelve-
> member court of officer and enlisted members sentenced
> Kreutzer to death, a dishonorable discharge,
> forfeiture of all pay and allowances, and reduction to
> E-1.  The convening authority approved the sentence as
> adjudged.

United States v. Kreutzer, 61 M.J. 293, 294-95 (C.A.A.F. 2005)

(noting further that the maiming and aggravated assault

specifications were consolidated with the attempted premeditated

murder specifications and provisionally dismissed).

B.

After Appellant's initial trial, the CCA determined that

the sentence had to be set aside because counsel had been

ineffective by failing to conduct sufficient investigation into

Appellant's background for sentencing.  United States v.

Kreutzer, 59 M.J. 773, 775 (A. Ct. Crim. App. 2004).

Furthermore, a majority of that court also found that the

military judge's erroneous denial of Appellant's request for an

3

expert in mitigation required relief, which the CCA provided by setting aside all of the contested findings. Id.

The CCA only affirmed those findings to: violation of a lawful general regulation, larceny of military property, seventeen specifications of assault with a loaded firearm, and murder while engaging in an inherently dangerous act to another. Id. at 784. A rehearing on findings and sentence was permitted. Id.

C.

After the CCA's decision, the Government timely moved for en banc reconsideration, which was denied. The Judge Advocate General of the Army then certified the case to this Court. We affirmed the CCA's decision. Kreutzer, 61 M.J. at 306.

While the Government's motion for reconsideration to the CCA and certification to this Court were pending, Appellant remained on death row. Appellant made requests to prison officials through the appropriate channels to remove him from death row. Although prison officials acknowledged Appellant's requests, they did not take Appellant off death row.

Appellant filed for a writ of mandamus with the CCA requesting an order that he be transferred from death row to the general population, which the CCA denied for lack of jurisdiction. Kreutzer v. Harrison, No. 20040953, 2004 CCA LEXIS 352, at *4, 2004 WL 5863309, at *2 (A. Ct. Crim. App.

Sept. 24, 2004) (unpublished).  Appellant filed a similar petition for a writ of mandamus with this Court, and we granted relief to the extent that Appellant was to be removed "from death row at the United States Disciplinary Barracks and place[d] . . . in appropriate custody in light of the circumstances and status of his case."  Kreutzer v. United States, 60 M.J. 453 (C.A.A.F. 2005) (summary disposition).  The basis of that opinion was that Army regulations prohibited the commingling of prisoners under a sentence of death with prisoners who were not.  Id. (citing Dep't of the Army Reg. (AR) 190-47, The Army Corrections System ¶ 12-6.b (Apr. 5, 2004)).  Shortly after this Court issued the writ of mandamus, Appellant was removed from death row and classified as a medium custody inmate.

D.

At the findings and sentence rehearing, Appellant pled guilty to sixteen specifications of assault in which grievous bodily harm was intentionally inflicted with a loaded firearm, one specification of assault with a dangerous weapon, one specification of attempted premeditated murder, and one specification of premeditated murder.  A military judge sitting as a general court-martial found Appellant guilty of seventeen specifications of attempted premeditated murder and one specification of assault with a means likely to produce death or

5

grievous bodily harm.  Appellant was sentenced to a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

During the rehearing, Appellant made a motion for confinement credit based on, inter alia, a violation of R.C.M. 305 and Article 13.  Appellant argued that he was entitled to credit for being confined on death row after the CCA set aside his death sentence.  The military judge denied Appellant's motion because he found that Article 13 and R.C.M. 305 had not been violated, and the CCA, after recognizing Appellant's motion below for additional credit, affirmed the findings of guilty and the sentence without modification, United States v. Kreutzer, No. 9601044, slip op. at 2 (A. Ct. Crim. App. Nov. 5, 2010).

## II.

Appellant argues that his status changed from sentenced prisoner to pretrial confinee as a matter of law thirty days after the sentence from his first court-martial was set aside. He cites our decisions in United States v. Miller, 47 M.J. 352 (C.A.A.F. 1997), and United States v. Combs, 47 M.J. 330 (C.A.A.F. 1997), in support of this proposition.  We do not agree.  Neither case is apposite to the instant one.

Miller was a case in which the Court of Criminal Appeals reduced the appellant's sentence of confinement to a period of time which the appellant had already served.  47 M.J. at 360

6

(noting that Miller's release date was calculated to be the day after the CCA released its opinion). Because the appellant had clearly served his full term of confinement for the offenses of which he stood convicted, he could no longer be subject to punishment. Id. Therefore, under those circumstances, the appellant was entitled either to a hearing under R.C.M. 305 or to be released. Id. at 361-62.

In Miller, we recognized that appellants have an interest in a favorable inchoate decision of the CCA that would result in an appellant's release from confinement, but that interest only becomes sufficiently weighty to warrant action when the Judge Advocate General decided on a course of action to pursue (appeal or abide by the CCA decision) or the thirty-day period for appeal had passed.[1] Id. In this case, Appellant's sentence to confinement was not reassessed to a term he had already served; thus, Miller is inapplicable to the situation presented here.

In Combs, the CCA set aside the appellant's unpremeditated murder conviction, affirmed his convictions for willful disobedience of a lawful order and battery, and set aside his sentence. 47 M.J. at 330-31. Appellant was not confined during

---

[1] The Miller majority cited Moore v. Adkins, 30 M.J. 249 (C.M.A. 1990), a case in which the Court of Military Review had dismissed all charges on statute of limitations or factual sufficiency grounds, leaving the accused without a conviction. Because Appellant here remained convicted of a number of offenses, Moore is also inapplicable to this case.

7

a rehearing on the unpremeditated murder charge and sentencing, but his rank was reduced despite the absence of a lawfully adjudged sentence. Id. at 331. A two-judge plurality of this Court opined that the appellant was punished under Article 13 by being stripped of his rank during this period. Id. at 334. Chief Judge Cox, concurring in the result, explicitly refused to find whether this constituted punishment under Article 13 or simply credit for deprivation tantamount to confinement under United States v. Allen, 17 M.J. 126 (C.M.A. 1984). Combs, 47 M.J. at 334 (Cox, C.J., concurring).

Regardless of whatever precedential value Combs may have, given its status as a plurality opinion, it too is not on point, because Combs was released from confinement after his sentence was set aside. As with the appellant in Miller, Combs had already served a period of confinement -- a little over two years -- that was reasonably likely to have met or exceeded any sentence he would have received on his remaining charges. Combs, 47 M.J. at 333 (noting that Combs had served some two years of his sentence); id. at 330-31 (observing that Combs remained convicted of battering his three-year-old daughter and willfully disobeying a lawful order); see also Manual for Courts-Martial, United States (MCM) pt. IV, ¶¶ 15.e.(5) & 54.e.(7) (1984 ed.) (stating the maximum period of confinement for willful disobedience of a noncommissioned officer was one

year and for battery of a child was two years).  After the sentence was set aside, the government released Combs instead of holding him after an R.C.M. 305 hearing, which was within its prerogative.  47 M.J. at 331.

In this case, the CCA affirmed Appellant's convictions of one specification of murder while engaged in an inherently dangerous act, seventeen specifications of assault with a loaded firearm, one specification of violation of a lawful general order, and one specification of larceny of government property. Kreutzer, 59 M.J. at 784-85.  The capital sentence was set aside, and a rehearing was permitted to prove up the greater offenses and to resentence Appellant.  Id. at 784-85.  Appellant still had the possibility of a life sentence pursuant to the offenses to which he pled guilty.  MCM pt. IV, ¶ 43.e.(2) (2008 ed.).

Article 13, by its terms, only applies to persons "held for trial."[2]  United States v. Inong, 58 M.J. 460, 463 (C.A.A.F. 2003) ("Article 13 prohibits . . . the intentional imposition of punishment on an accused before his or her guilt is established at trial . . . .").  Under the circumstances of this case, Appellant was a prisoner convicted of very serious offenses with

---

[2] The dissent's reliance on Army regulations to interpret whether the individual is a pretrial confinee or an adjudged prisoner within the scope of Article 13 is unhelpful, because

9

a temporarily inchoate sentence.[3]  He had not requested, and did not request, release from confinement.  The fact that the capital sentence had been set aside, for reasons peculiar to capital litigation, did not convert him from an adjudged prisoner to a person held for trial as regards the offenses which the CCA had affirmed.

At most, the retention of Appellant on death row prompts a dispute not over punishment prior to trial (the concern of Article 13) or of the inception and continuation of pretrial confinement (the concern of R.C.M. 305) but of the proper level of confinement.  This decision is normally placed in the hands of correctional authorities, but that discretion may be limited by regulation.  In our order of January 5, 2005, this Court recognized that the confinement authorities had abused this discretion, and we directed Appellant's release from death row because AR 190-47, ¶ 12-6.b, prohibited the commingling of death row prisoners with other prisoners not subject to a death sentence.  Kreutzer, 60 M.J. at 453.  But Appellant, as an adjudged prisoner, received the only relief he was entitled to for a violation of that regulation when this Court ordered that

---

"regulation[s] cannot change the statute."  Public Lands Council v. Babbitt, 529 U.S. 728, 745 (2000).

[3] As noted above, that temporarily inchoate sentence was ultimately resolved to confinement for life, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-1.

he be taken off death row.  Since Appellant did not come within the purview of Article 13, UCMJ, he is entitled to no relief under it.

III.

The judgment of the United States Army Court of Criminal Appeals is affirmed.

United States v. Kreutzer, No. 11-0231/AR

ERDMANN, Judge, with whom BAKER, Chief Judge, joins (dissenting):

I respectfully dissent from the majority's conclusion that Kreutzer was not entitled to relief under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813, or Rule for Courts-Martial (R.C.M.) 305, because he remained subject to lawful confinement. The Army Court of Criminal Appeals (CCA) set aside all of the contested findings and Kreutzer's entire sentence, not just the portion that applied to the death penalty. United States v. Kreutzer, 59 M.J. 773 (A. Ct. Crim. App. 2004).[1] Even though Kreutzer remained convicted of the non-capital offenses to which he had pleaded guilty, the CCA remanded his case for possible retrial on the offenses that were set aside and a sentence rehearing.

As Kreutzer was subject to retrial on the offenses that had been set aside and since he had not been sentenced, his trial

---

[1]  The court affirms the findings of guilty of the Specification of Charge II and Charge II and the Specification of Charge IV and Charge IV. The remaining findings of guilty and the sentence are set aside. The same or a different convening authority may order a rehearing on Specification 16 of Charge I as well as the set aside portions of Specifications 1-15, 17, and 18 of Charge I and Charge I, the Specification of Charge III and Charge III, and the sentence. If the convening authority determines that a rehearing on these findings is impracticable, he may dismiss those offenses to which appellant pled not guilty and order a rehearing on the sentence only.

59 M.J. at 784-85.

was not over and he reverted to the same status as a pre-trial confinee, as correctly recognized by The Army Judge Advocate General (TJAG).[2]  Therefore the confinement protections of both Article 13, UCMJ, and R.C.M. 305 were available to him for the confinement period in question.  Because the government failed to provide any reasons for keeping Kreutzer on death row while he was not under sentence of death and since transfer to an alternative placement at the United States Disciplinary Barracks (USDB) was sufficient to ensure his presence at trial, I would reverse the decision of the CCA and grant Kreutzer four days of credit for each day he was held on death row after the CCA decision vested.

The procedural history pertinent to this appeal is as follows:

- March 11, 2004 –– The CCA sets aside the contested findings and the sentence;

- April 7, 2004 –– The CCA grants the government's motion for a thirty-day extension of time in which to file a motion for reconsideration;

- May 10, 2004 –– The government files a timely motion for reconsideration with the CCA;

- June 22, 2004 –– The CCA denies the request for reconsideration; TJAG orders Kreutzer released from

---

[2] On June 22, 2004, following the issuance of the CCA decision, TJAG ordered Kreutzer released from post-trial confinement, which reflected a subsequent placement in pre-trial confinement. On July 13, 2004, TJAG ordered an R.C.M. 305 pre-trial confinement review.

post-trial confinement; Kreutzer is not moved from death row;

- June 29, 2004 -- TJAG files a certificate for review with the United States Court of Appeals for the Armed Forces (CAAF);

- July 6, 2004 -- Kreutzer submits an Inmate Request Slip to the USDB Commandant inquiring why he remained on death row;

- July 12, 2004 -- USDB Deputy Commandant responded to Kreutzer's request, stating the Commandant had requested a legal review of his case by the Fort Leavenworth SJA office;

- July 13, 2004 -- TJAG revokes his June 22 order releasing Kreutzer from post-trial confinement and authorizes an R.C.M. 305 review;

- July 22, 2004 -- Kreutzer submits an Inmate Request Slip to the Mental Health Clinic requesting assistance in being transferred from death row;

- July 25, 2004 -- Kreutzer submits an Inmate Request Slip asking to speak personally with the USDB Commandant regarding his continued confinement on death row;

- July 26, 2004 -- USDB Commandant informs Kreutzer he will conduct an R.C.M. 305 review to determine if continued confinement is necessary;

- July 27, 2004 -- In response to the notice of the R.C.M. 305 review, Kreutzer submits a memorandum to the USDB Commandant requesting to be transferred to the general population until a final sentence is determined;

- August 19, 2004 -- Kreutzer submits an Inmate Request Slip to the USDB Staff Judge Advocate asking for a status update on the R.C.M. 305 hearing;

- August 25, 2004 -- USDB Commandant issues his R.C.M. 305 decision which determined that continued

> confinement is necessary but does not address Kreutzer's death row confinement;

- September 21, 2004 -- Kreutzer petitions the CCA for extraordinary relief asking to be removed from death row and placed in the general population;

- September 24, 2004 -- The CCA denies the petition for lack of jurisdiction due to the certification to CAAF. Kreutzer v. Harrison, No. ARMY MISC 20040953 (ARMY 9601044) (A. Ct. Crim. App. Sept. 24, 2004);

- September 29, 2004 -- Kreutzer petitions CAAF for extraordinary relief asking to be removed from death row;

- January 5, 2005 -- CAAF orders Kreutzer removed from death row. Kreutzer v. United States, 60 M.J. 453 (C.A.A.F. 2005);

- January 13, 2005 -- Kreutzer is transferred from death row to protective custody;

- August 16, 2005 -- CAAF affirms the CCA decision and order of a rehearing on the sentence based on the affirmed pleas or a rehearing on the greater offenses. United States v. Kreutzer, 61 M.J. 293 (C.A.A.F. 2005);

- January 6, 2006 -- The convening authority orders Kreutzer into pre-trial confinement, where he remained until his rehearing.

At his retrial on the charges that were set aside by the CCA, Kreutzer requested ten days of sentencing credit for each of the 280 days he was confined on death row between the date he believed the CCA decision became effective and the date of his transfer off death row pursuant to this court's January 5, 2005 order (April 11, 2004 – January 13, 2005). The military judge denied this motion, stating that Kreutzer's command "was not

4

required to release [him] from death row after the decision by the Army Court of Criminal Appeals while the case was certified by TJAG to the Court of Appeals of the Armed Forces [sic]." The military judge also found that the USDB commander did not act in bad faith by keeping Kreutzer on death row, therefore no relief was warranted.

This case essentially presents two issues: first, whether the government had an obligation to address Kreutzer's continued confinement on death row at some point following the CCA decision which set aside his death sentence;[3] and if so, is Kreutzer entitled to additional pre-trial confinement credit for the time he was held on death row after that decision.

a. Continued Confinement on Death Row

Contrary to the majority's opinion, this court's decision in United States v. Miller, 47 M.J. 352 (C.A.A.F. 1997), is directly applicable to this case. In Miller, this court held that when a CCA issues an opinion favorable to the appellant, two thirty-day periods run concurrently: the thirty-day period

---

[3] It is important to note what this case is not about. It is not about whether Kreutzer should have been released from confinement after the CCA set aside his conviction for the contested findings (which included all of the death sentence eligible offenses) and the sentence. Kreutzer recognized that he remained convicted of the offenses to which he had pleaded guilty (all non-death sentence eligible offenses) and throughout these proceedings has only requested that he be transferred from death row after his death sentence was set aside pending further appellate and trial proceedings.

5

to request reconsideration of the CCA decision (C.C.A. R. 19) and the thirty-day period for certification to this court (C.A.A.F. R. 19(a), 22(b)). Miller, 47 M.J. at 361. If the service Judge Advocate General decides not to further pursue the case by requesting reconsideration from the CCA or by filing a certification with this court, (s)he must notify the convening authority to comply with the CCA opinion or conduct an R.C.M. 305 hearing. Id.

Normally the two thirty-day periods will run concurrently. However, if, as here, the government requests reconsideration of the CCA decision, the two thirty-day periods discussed in Miller are decoupled. If that request is denied, the government then has thirty days from the date of the denial in which to certify the case to this court pursuant to Rule 19 of this court's rules of practice and procedure. C.A.A.F. R. 19. Once TJAG certifies the issues to this court or the thirty-day period ends without a certification filing, whichever is first, Kreutzer's interest in the favorable decision of the court below (even if inchoate) required either that he be transferred from death row or a hearing under R.C.M. 305 be held to determine whether his continued confinement on death row was appropriate. Miller, 47 M.J. at 362.

In Kreutzer's case TJAG filed a timely request for reconsideration at the CCA, which was denied. On June 28, 2004,

6

TJAG certified the issues to this court. Once the certification was filed the government was required to conduct an R.C.M. 305 hearing to determine whether Kreutzer should remain on death row pending the government's appeal. Kreutzer first requested a transfer from death row on July 6, 2004. While an R.C.M. 305 hearing was eventually conducted in August 2004, the decision did not address Kreutzer's sole request -- that he be transferred from death row. Instead, the R.C.M. 305 decision determined that further confinement was necessary -- a status that Kreutzer had never challenged. Kreutzer then remained confined on death row until seven days after this court ordered his transfer in January 2005. Kreutzer v. United States, 60 M.J. 453 (C.A.A.F. 2005).

While the majority infers that Kreutzer remained subject to post-trial confinement, that conclusion is not consistent with the action of the CCA which set aside his sentence.[4] According

---

[4] The majority notes that "Article 13, by its terms, only applies to persons 'held for trial,'" citing United States v. Inong, 58 M.J. 460 (C.A.A.F. 2003). United States v. Kreutzer, __ M.J. __ (9) (C.A.A.F. 2012). While I agree that Article 13, UCMJ, applies to persons "held for trial," the difference in our respective positions is when the trial terminates. I believe that a trial under the UCMJ is not over until all charges have been resolved and the sentence adjudged. The majority asserts that the trial is over once guilt is established on some of the charges, and Article 13, UCMJ, is therefore no longer applicable. Id. at __ (9) ("'Article 13 prohibits . . . the intentional infliction of punishment on an accused before his or her guilt is established at trial. . . .'" (quoting Inong, 58 M.J. at 463)). As support for this principle, Inong cites

7

to Dep't of the Army, Reg. 190-47, Military Police, The Army

Corrections System, para. 3-1 (June 15, 2006) [hereinafter AR

Reg. 190-47], an accused who is confined pending preferral or

disposition of charges or trial by court-martial is a pre-trial

prisoner.  An accused whose sentence has been announced in open

court but not approved by the convening authority is an adjudged

prisoner.  Id.  An accused becomes a sentenced prisoner when the

convening authority takes action to approve the confinement

portion of the sentence.  Id.

The facts in United States v. Combs, 47 M.J. 330 (C.A.A.F.

1997), a plurality decision that was concurred in by then-Chief

Judge Cox, are directly analogous to Kreutzer's situation.  The

Court of Military Review set aside some, but not all, of the

findings of guilt against Combs and set aside his sentence.  Id.

at 330.  While he was awaiting rehearing, Combs was stripped of

his rank, pay, and privileges, despite his sentence being set

---

United States v. Fricke, 53 M.J. 149 (C.A.A.F. 2000).  However,
Fricke contains no such statement nor inference and in fact
recites the general rule that "Article 13, UCMJ prohibits both
the purposeful imposition of punishment on a military accused
prior to court-martial and pretrial confinement conditions which
are more rigorous than the circumstances required to ensure an
accused's presence."  Id. at 154 (citing United States v.
McCarthy, 47 M.J. 162, 165 (C.A.A.F. 1997)).  None of the more
recent Article 13, UCMJ, cases decided by this court have
employed or referenced that language from Inong.  See United
States v. Zarbatany, 70 M.J. 169 (C.A.A.F. 2011); United States
v. Williams, 68 M.J. 252 (C.A.A.F. 2010); United States v.
Adcock, 65 M.J. 18 (C.A.A.F. 2007); United States v. King, 61
M.J. 225 (C.A.A.F. 2005).

aside.  Id. at 332.  Like Kreutzer, Combs was "'trapped in the twilight of the court-martial process . . . adjudicated but unsentenced,'" after the CCA set aside his contested findings and his entire sentence.  Id. at 331 (citation omitted).  This court found an Article 13, UCMJ, violation when Combs was stripped of his rank before he was sentenced.  Id. at 334.  This punishment, like Kreutzer's confinement on death row without a sentence of death, constituted "'egregious, intentional conduct by command where there is no evidence of a legitimate, non-punitive objective for the conduct complained of, the apparent singling out of an accused for personal humiliation, and restrictions on liberty so oppressive as to be more consistent with the status of prisoner.'"  Id. at 332 (emphasis omitted) (citation omitted).

At the time TJAG certified the issues to this court, Kreutzer had not been sentenced and the sentence had obviously not been approved by the convening authority.  At that point Kreutzer reverted to being a pre-trial prisoner and, under Miller, the government was required to conduct an R.C.M. 305 hearing to determine whether he should remain on death row pending the government's appeal.  The 199 days Kreutzer remained on death row while not subject to a sentence of death clearly

9

violated AR Reg. 190-47, para. 12-6.b., which prohibits the commingling of death sentence and non-death sentence confinees.[5]

  b.  Entitlement to Credit

Article 13, UCMJ, prohibits the imposition of punishment prior to trial and conditions of arrest or pre-trial confinement that are more rigorous than necessary to ensure the accused's presence at trial.  In King, 61 M.J. at 227-28, we examined the scope of Article 13, UCMJ:

> Article 13, UCMJ, prohibits two things:  (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial.  The first prohibition of Article 13, UCMJ, involves a purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."  Bell [v. Wolfish], 441 U.S. [520,] 539 [(1979)]; [United States v.] McCarthy, 47 M.J. [162,] 165, 167 [(C.A.A.F. 1997)].

> The second prohibition of Article 13 prevents imposing unduly rigorous circumstances during pretrial detention.  Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the conditions may be so excessive as to constitute punishment.  McCarthy, 47 M.J. at 165; United States v. James, 28 M.J. 214, 216 (C.M.A. 1989) (conditions that are "arbitrary or purposeless" can be considered to raise an inference of punishment).

---

[5] The period between the date that TJAG certified the case to this court (June 29, 2004) and the date that Kreutzer was removed from death row (January 13, 2005) constitutes 199 days.

The second prong of Article 13, UCMJ, prohibits conditions of confinement that are more rigorous than necessary to ensure the accused's presence at trial. Confinement conditions that are "'arbitrary or purposeless'" may raise an inference of punishment under Article 13, UCMJ. King, 61 M.J. at 228 (quoting James, 28 M.J. at 216). In Zarbatany, 70 M.J. 169, we recognized that the primary mechanism for addressing violations of Article 13, UCMJ, has been confinement credit. Id. at 174 (citing King, 61 M.J. 225). We noted that "[t]he drafters of the R.C.M. subsequently 'explicitly recognized' this practice with the adoption of R.C.M. 305(k) in the 1984 Manual for Courts-Martial, United States (MCM)." Id.

There can be little dispute that Kreutzer's continued confinement on death row was more rigorous than necessary to ensure his presence at his retrial. Under the circumstances of this case, a transfer from death row would result in Kreutzer being placed in protective custody or some other placement segregated from sentenced prisoners.[6] It is difficult to argue

---

[6] In our January 5, 2005, order we ordered that Kreutzer be "remove[d] . . . from death row . . . and place[d] . . . in appropriate custody in light of the circumstances and status of his case." 60 M.J. at 453. Upon his transfer from death row on January 13, 2004, Kreutzer was initially placed in protective custody. As Kreutzer was not a sentenced prisoner he could not be placed in the general prison population. His initial placement in protective custody was not unreasonable since the USDB at Leavenworth is not authorized to hold pre-trial prisoners absent special circumstances and does not have a

11

that any level of confinement within the USDB would not be sufficient to ensure his presence at his retrial.  It is also difficult to argue that conditions for death row prisoners are not more rigorous than those of other prisoner classifications. USDB Regulation 600-1 states that death sentence prisoners are placed in hand-irons when outside of their living area and in full restraints when outside of the Special Housing unit, and are required to wear an orange jumpsuit instead of the regular brown jumpsuit which constitutes a prisoner's duty uniform. USDB Reg. 600-1, Manual for the Guidance of Prisoners para. 13-1, 13-3, 13-4 (Aug. 1, 2002).  Additionally, an affidavit from a former noncommissioned officer in charge of the USDB mental health clinic stated the differences between protective custody prisoners and death row prisoners were significant.  While protective custody prisoners were allowed to socialize, dine, and attend group therapy together, death row prisoners remained in their cells for twenty-three hours a day, were allowed one hour of recreation with one other prisoner per day, and were required to dine alone in their cells.  Death row prisoners also were not eligible for group therapy.

---

dedicated section for pre-trial prisoners.  See AR Reg. 190-47 para. 2-2, 3-2.c.  Once this court issued its decision on the certified issue, the Army took the required steps to transfer Kreutzer to a pre-trial facility.

12

In Kreutzer's case the government admits that there is no evidence on the record as to why he remained confined on death row following the CCA's decision.  The military judge's finding that the government was not required to transfer Kreutzer from death row once TJAG certified the issues to this court was incorrect as a matter of law.  I would find that Kreutzer is entitled to relief under the second prong of Article 13, UCMJ, as his continued confinement on death row was arbitrary and purposeless and more rigorous than necessary to ensure his presence at his retrial.[7]

The government has argued that meaningful relief is unavailable in this case since Kreutzer received a life sentence.  However, there remains the possibility that his life sentence will be converted into a term of years at some point in

---

[7] I note that this court also could find a violation under the first prong of Article 13, UCMJ.  That prong can be satisfied by finding an intent to punish or by "examining the purposes served by the restriction or condition, and whether such purposes are 'reasonably related to a legitimate governmental objective.'" King, 61 M.J. at 227.  As noted, the legitimate governmental purpose in this area is clearly set forth in AR Reg. 190-47 para. 12-6.b., which provides that prisoners sentenced to death will not be commingled with other than death sentence prisoners. While "confinement in violation of service regulations does not create a per se right to sentencing credit," Adcock, 65 M.J. at 23, violation of a regulation can be considered when assessing whether there was an Article 13, UCMJ, violation.  King, 61 M.J. at 228.  Here there was no evidence on the record as to why Kreutzer remained confined on death row following the CCA's decision, and the government was unable to identify any legitimate governmental objective or security necessity served by his continued confinement on death row.

the future.  See Article 74(a), UCMJ, 10 U.S.C. § 874(a) (2006);

Dep't of the Army, Reg. 15-130, Boards, Commissions, and

Committees, Army Clemency and Parole Board para. 3-1 (Oct. 23,

1998).  As such, relief in the form of sentencing credit under

Article 13, UCMJ, is appropriate for this type of violation.

Accordingly, under the unique circumstances of this case, I

would award four days of sentencing credit for each of the 199

days Kreutzer was confined on death row after the case was

certified by the government to this court until his transfer

from death row pursuant to this court's order.[8]

---

[8] In King, this court awarded three-for-one confinement credit
for the period in which King was kept in solitary segregation
during pre-trial confinement where the government provided no
evidence it explored alternatives to that confinement and no
explanation for why he was so confined.  61 M.J. at 229.
Comparatively, the government's actions in this case warrant an
award greater than the three-for-one credit awarded in King.

14